THE CITY OF ROCHESTER, Respondent, *v.* BENJAMIN SIMPSON, Appellant.

*Municipal ordinance — limited in its scope, to cases affecting the public health, by reason of the provisions of the statute authorizing its adoption.*

An ordinance of the city of Rochester required that every owner " of any stone quarry or premises heretofore used for quarrying stone therefrom within the city of Rochester shall cause the same to be filled with earth even with the surface of the ground before any excavation was made, or shall cause the water therein to be drawn therefrom."

In an action brought to recover a penalty imposed thereby, it appeared that the ordinance was based upon a statute authorizing the common council to pass and enact such by-laws and ordinances as they shall from time to time deem necessary and proper for the filling up of any grounds within the said city which shall be sunken, damp, foul, incumbered with filth and rubbish or unwholesome.

*Held,* that it was the intention of the statute to provide for the prevention and abatement of nuisances injurious to the public health, and that the ordinance should be interpreted with reference thereto.

That the proper construction of the ordinance was not that it required that every excavation or depression in the surface of the ground within the city, which might have been made at any time by the quarrying of stone, should be filled in even with the surface of the surrounding land, but it was limited in its scope to the cases in which such action would tend to promote the public health.

That there being no evidence that the defendant's pond, complained of in this case, contained water which was either stagnant or impure, or that the existence of the pond was in any manner detrimental to the public health, or to private comfort or convenience, that the ordinance in question had no application to this case, and that the defendant was not liable to the penalty imposed thereby.

Appeal by the defendant Benjamin Simpson from a judgment, entered in the office of the clerk of the county of Monroe on the 15th day of March, 1889, in favor of the plaintiff, the City of Rochester, for fifty dollars damages and thirteen dollars and sixty-five cents costs.

The action was originally brought in the Municipal Court of the city of Rochester, from the judgment rendered in which the defendant appealed to the County Court, where such judgment was affirmed and judgment was rendered against the defendant for the amount of the penalty imposed for a violation of the city ordinance relating to the filling of land situated in the city of Rochester, which had been used for a stone quarry.

*R. E. White*, for the appellant.

*,G. D. Forsyth*, for the respondent.

DWIGHT, P. J.:

The action was to recover a penalty imposed by an ordinance of the city of Rochester, passed October 25, 1887, in the following terms:

Sec. 4. "Every owner, occupant or lessee of any stone quarry, or premises heretofore used for quarrying stone therefrom, within the city of Rochester, shall cause the same to be filled with earth, even with the surface of the ground, before any excavation was made, or shall cause the water therein to be drained therefrom, and said quarries or excavations kept dry and the water prevented from accumulating or standing therein, under a penalty of fifty dollars for each offense, to be sued for and recovered from the owner, occupant or lessee thereof, severally and respectively."

This ordinance was based upon the following provisions of the statute which constitutes the charter of the city of Rochester.

Sec. 276. "The common council shall have power to pass and enact such by-laws and ordinances as they shall, from time to time, deem necessary and proper, for the filling up, draining, cleansing, cleaning and regulating of any grounds, yards, basins, slips or cellars within the said city, that shall be sunken, damp, foul, encumbered with filth and rubbish, or unwholesome."

It is manifest that both of these enactments must have reasonable interpretation and reasonable application, or they are liable to become the instruments of oppression and to violate the rights of citizens. The whole tenor of the provision of the charter shows that it was intended to provide for the prevention and abatement of nuisances, injurious to the public health, and, among other things, to prevent the accumulation of pools of stagnant and impure water in sunken places within the city. The ordinance quoted, resting, as it does, wholly upon the authority of this provision of the charter, must be interpreted by reference thereto, and can have no force or application except within the lines and to the intent and purpose indicated by the statute.

Upon the principles thus briefly stated we are of opinion that the case presented by this appeal does not fall within the scope of

the ordinance upon which this action is brought. It is not a reasonable interpretation of that ordinance that it requires every excavation or depression in the surface of lands within the city which may at any time, however remote, have been made by the quarrying of stone, whatever its present condition or use, to be filled up even with the surface of the surrounding lands; nor that it forbids that any such excavation should be utilized for an ornamental pond, or for a fish or ice pond, fed and filled from a living source of pure water. Such an application of the ordinance would violate the natural and constitutional right of the citizen to use and enjoy his property in his own way so long as such use interferes with no other public or private right. (*People* v. *Marx*, 99 N. Y., 386; *Matter of Jacobs*, 98 id., 98, 110.)

The provision of the statute quoted was evidently made in the interest of the public health, and the ordinance has no sanction or authority except as it tends to promote the same general purpose. (*Babcock* v. *Buffalo*, 1 Sheld. Sup. Ct. Rep., 321; affirmed, 56 N. Y., 268; *Matter of Jacobs*, *supra*, 112; *People ex rel. Cartmill* v. *Rochester*, 44 Hun, 169.)

This action was apparently brought upon the theory of a literal construction of the ordinance in question. The complaint contains no allegation that the water in the defendant's pond was either stagnant or impure, nor that the existence of the pond was in any manner detrimental to the public health, or to public or private comfort or convenience. The allegation was merely that the land had been formerly used as a stone quarry, and that it had been permitted to be and remain filled, or nearly filled with water for several months. So too, on the trial, the complainant rested his case on proving the above facts, but, after a motion for a nonsuit, obtained leave, without amending his complaint, to introduce further evidence for the purpose of showing that the pond was "a nuisance and unwholesome." Some evidence was thereupon received tending to show that in the hot summer months an unpleasant odor sometimes arises from the pond; that there is sometimes a "green scum" on a portion of its surface near its edge; that the bodies of dead animals, cats and dogs, have been taken from it, and that when raised to a certain height water leaches or soaks from the pond into some neighboring cellars.

This evidence was objected to and might properly have been excluded as not within the allegations of the complaint; but upon the whole evidence in the case we think it was not established that the pond was within the condemnation of the ordinance in question, reasonably construed.

In appeared from undisputed evidence that the pond had existed, as such, for upwards of forty years; that it is of about two acres in extent and from eight to seventeen feet deep; that it is fed by a copious living spring in one corner; that ice was cut from it at least thirty-four years ago; that the defendant has used it for an ice pond about nineteen years and has erected ice-houses on its bank for the storage of ice; that it is inhabited by fish of various kinds, bass of three pounds weight having been taken from it; that about seventeen years ago the defendant pumped out the water, as far as was possible, by means of a large steam pump, and enlarged and deepened the pond by taking out stone; that he was obliged to run his steam pump three nights in the week to keep the water out sufficiently to enable him to carry on the work, and that when so emptied the water could be seen pouring in large volume from the spring above mentioned. It also appears that the pond has an outlet into the Genesee street sewer, which carries off the surplus water beyond that which escapes through fissures in the rock. There is no evidence that the pond receives any considerable amount of surface water, nor any drainage of an objectionable character. The minute vegetable growth, often called " green scum," at the edge of the pond, and the occasional unpleasant odor from the water in mid-summer, are conditions to which all bodies of fresh water not aerated by rapid motion are subject; and the defendant's pond is not to be condemned because mischievous or evil disposed persons have sometimes thrown into it the dead bodies of animals. Should the pond become foul from these or other causes, so as to be injurious to the health or comfort of the neighborhood, a case would arise for the application of an ordinance, based upon the provisions of the statute, requiring it to be cleansed; and it is probable that the board of health of Rochester have already ordinances in force adequate for that purpose.

It seems to us clear that, upon the evidence before us, the ordinance under which this action was brought can have no application

to the case of the defendant's pond except upon a literal construction of its terms, not warranted by the statute under which it was framed, and which in this case would be unreasonable, oppressive and subversive of the rights of the defendant.

We think the judgments of the County Court and of the Municipal Court must be reversed.

Corlett, J., concurred; Macomber, J., not voting.

Judgment of the County Court and of the Municipal Court of Rochester reversed, with costs of this appeal and in the County Court.