HEALTH DEPARTMENT OF CITY OF NEW YORK *v.* RECTOR, ETC., OF TRINITY CHURCH.

(*Common Pleas of New York City and County, General Term.* February 1, 1892.)

1. CONSTITUTIONAL LAW—"DUE PROCESS OF LAW"—TENEMENT-HOUSE WATER SUPPLY.
   Laws 1882, c. 410, (Consolidation Act,) §§ 663, 665, which prescribe that all tenement-houses shall be provided with a supply of Croton water at one or more places on each floor, whenever the owners shall be so directed by the board of health, under penalty of fine and imprisonment for failure so to do, is unconstitutional, in that it authorizes such order by the board of health without notice to the owner, and denies him an opportunity to show sufficient and satisfactory grounds of objection to the order, whereby he is affected in person and property without "due process of law."

2. SAME—TAKING PRIVATE PROPERTY WITHOUT COMPENSATION.
   The act is further unconstitutional, in that the additional expense incurred by the compulsory supply of water to the several floors is a taking of private property without the consent of the owner and without compensation; and this, without regard to the contention that the act is a valid exercise of the police power of the state.

3. SAME—DUE EXERCISE OF POLICE POWER.
   The statute in question cannot be considered a legitimate exercise of the police power of the state, in a case where the evidence shows that the premises affected are already supplied with water easily accessible, that the absence of water on the upper floors is not prejudicial to the health of the tenants, and that the only effect of conducting the water to those floors would be to create a convenience for those tenants.

Exceptions from trial term.

Action by the health department of the city of New York against the Rector, Church-Wardens, and Vestrymen of Trinity Church to recover a penalty for failing to supply the floors of a tenement-house with Croton water. Verdict was directed for plaintiff, and defendant moves for a new trial on exceptions ordered to be heard in the first instance at the general term. Exceptions sustained.

Argued before BOOKSTAVER, BISCHOFF, and PRYOR, JJ.
*W. P. Prentice*, for plaintiff.   *S. P. Nash*, for defendant.

PRYOR, J.   The case is before us upon a motion by defendant for a new trial on exceptions directed to be heard at general term.   The action is to recover a penalty claimed to be incurred by breach of a duty alleged to be imposed by sections 663, 665, and 660 of the consolidation act.[1]   Section 663 prescribes that every tenement-house erected or "converted" after May 14, 1867, "shall have Croton or other water furnished at one or more places on each floor occupied or intended to be occupied by one or more families; and all tenement-houses shall be provided with a like supply of water by the owners thereof whenever they shall be directed so to do by the board of health; but a failure in the general supply of water by the city authorities shall not be construed to be a failure on the part of such owner, provided that proper and suitable appliances to receive and distribute such water are placed in said house."   By section 665, every owner or other person violating any provision of section 663 is guilty of a misdemeanor, punishable by fine and imprisonment; and "shall be also liable to pay a penalty of ten dollars for each and every day that such offense shall continue."   Section 666 defines a "tenement-house" "to mean and include every house, building, or portion thereof which is rented, leased, let, or hired out to be occupied, or is occupied, as the home or residence of three families or more, living independently of each other," etc.   It is assumed for argument that the houses in question are tenement-houses, within the terms of the definition.   As appears by the complaint, by plaintiff's proof, and by its brief before us, the action proceeds upon that clause of the statute which requires all tenement-houses, on the direction of the board of health, to be provided with water on each floor; and accordingly the plaintiff put in evidence the order of the board, whereby defendant was required to provide "suitable appliances to receive and distribute a supply of water on the top floor of No. 59; the basement, first and second floors of No. 77; the basement, first, second, and third floors of No. 84; and the basement and attic of No. 86."   The complaint charges the defendant with default in respect only to two houses, namely, Nos. 77 and 84; and the default imputed is not the omission to do the thing required by the order, namely, to provide suitable appliances, etc., but a neglect "to furnish any water in sufficient quantity on each floor of the houses."   For answer to the action, defendant alleges—*First*, that water was furnished in the basement floor or in the yard of each house; *secondly*, that the order of the board was made without any previous notice to defendant; *thirdly*, that the act pursuant to which the order issued was not "a regulation in a matter affecting health;" and, *fourthly*, that the requirement of the act is unconstitutional and void. On the close of the case each party moved the court to direct a verdict in its favor.   The court denied defendant's motion, subject to due exception, and granted plaintiff's motion, subject to like exception.   Accordingly the jury returned a verdict for plaintiff in the sum of $200, the amount of penalties for 20 days' default.

In deference to the manifest importance of the case, as involving the gravest questions of constitutional construction, as affecting the essential securities of property, and as fraught with consequences incapable of assignable limits, we have bestowed upon it the most deliberate and anxious consideration; and the result is the conviction that the verdict is without legal support. Since the action is brought to enforce a liability consequent upon the neglect to perform the obligation imposed by the order of the board of health, and since the delinquency with which the defendant was charged, and of which it was convicted, namely, a neglect to supply water, and not a breach of the

[1] Laws 1882, c. 410.

duty required by the order, namely, to provide proper and suitable appliances, in view of the strictness with which penal statutes are to be construed, the inference is plausible, to say the least, that the plaintiff failed to establish the fundamental condition of recovery. We prefer, however, to rest our decision on more solid and substantial grounds.

1. On the trial the defendant tendered evidence that compliance with the order of the board would exact an expenditure of at least $100 for each house; and, as the offer was rejected, the case "is to be considered as if the proof offered has been received." *Powell* v. *Pennsylvania*, 127 U. S. 688, 8 Sup. Ct. Rep. 992, 1257; *Scotland Co.* v. *Hill*, 112 U. S. 186, 5 Sup. Ct. Rep. 93. We have, then, a substantial pecuniary burden imposed upon defendant, by an order of which the statute pursuant to which it was made requires no notice in advance to be given, of which, accordingly, no notice in fact was given, and against which, therefore, no opportunity was afforded defendant to be heard and make defense. Furthermore, disobedience to the order against which no opportunity was afforded defendant to be heard and make defense is punishable by fine and imprisonment, besides exposing him to liability for a penalty recoverable by a civil proceeding. Indeed, the statute in terms stigmatizes such disobedience as an "offense." Manifestly, in passing the order the board exercised a judicial function; but, if this were not so in the nature of the thing, the statute, by section 620, makes it so, in declaring that "the action, proceedings, authority, and orders of said board shall at all times be regarded as in their nature judicial, and treated as *prima facie* legal and just." For anything apparent in the case, the defendant, upon opportunity given, might and would have exhibited sufficient and satisfactory ground of objection to the order; for example, that the tenants of the houses already enjoyed an abundant supply of water, and that they did not desire that which the order required in their behalf. Nay, such proof was given on the trial of this action; but the learned trial judge, with logical consistency, treated the order of the board as conclusive to the contrary, and in the direction of the verdict disregarded the evidence as wholly irrelevant and immaterial. That no man shall be affected in person or property by a proceeding to which he is not duly a party is a fundamental principle of American jurisprudence. Indeed, an opportunity of defense is an essential element in the conception of "due process of law." *Stuart* v. *Palmer*, 74 N. Y. 183. Hence, in *People* v. *Association*, (Sup.) 12 N. Y. Supp. 171, it was ruled that, had the statute under which the board was authorized to require a railroad company to make openings in an embankment dispensed with the necessity of notice, the act would have been unconstitutional; and that, the duties of the board being of a *quasi* judicial nature, the omission to give notice of the intended action was fatal to the regularity of the proceeding. So, in *Railway Co.* v. *Minnesota*, 134 U. S. 418, 10 Sup. Ct. Rep. 462, the supreme court of the United States declared an act of the legislature which authorized the board, without notice, to regulate the charges of a railroad company, to be unconstitutional, "as depriving the company of its property without due process of law, and depriving it of the equal protection of the laws." *Clark* v. *Mayor*, 13 Barb. 32; *Babcock* v. *City of Buffalo*, 1 Sheld. 317. Inasmuch, then, as the statute purports to authorize the order in controversy without notice to the defendant, it is void; and the omission in fact of notice to the defendant is fatal to the regularity of the proceeding.

2. That to the amount of the pecuniary sacrifice to be incurred by defendant in furnishing the additional supply of water to the tenants of its house its property would be taken is a self-evident proposition. Would such taking be justifiable? By section 1 of the fourteenth amendment of the federal constitution, "no state shall deprive any person of life, liberty, or property without due process of law." By section 6 of the first article of the state constitution, "no person shall be deprived of life, liberty, or property

without due process of law; nor shall private property be taken for public use without just compensation." Thus, by the fundamental law, person and property are coupled together in indissoluble association; are regarded as objects equally worthy of protection against arbitrary invasion; and are guarantied inviolability by the self-same securities. Defendant's property is proposed to be taken either for public or a private use. If for a public use, such taking would be mere confiscation, because without indemnity. If for a private use, such taking would be mere spoliation, because property may not be taken for a private purpose, even upon full compensation. *In re Deansville Cemetery Ass'n*, 66 N. Y. 569; *Association* v. *Topeka*, 20 Wall. 655. It is altogether immaterial, therefore, for which use defendant's property is proposed to be taken; in either case, the taking would involve a violation of the safeguards of the constitution. It is manifest, however, that the taking would in no sense be for the use of the public, but solely for the benefit of the tenants whom defendant is compelled by the act to accommodate with the convenience of water on the floors. To this argument plaintiff's answer is that the act is an exercise of police power, and so is not obnoxious to the prohibitions of the constitution, the suppressed premises of the syllogism being that the police power of the state is above and beyond the restraints of the constitution. As regards the restrictions of the federal constitution the proposition is not without authority, (*Barbier* v. *Connolly*, 113 U. S. 27, 5 Sup. Ct. Rep. 357; *Powell* v. *Pennsylvania*, 127 U. S. 683, 8 Sup. Ct. Rep. 992, 1257;) for "it cannot be supposed that the states intended, by adopting the fourteenth amendment, to impose restraints upon the exercise of their powers for the protection of the safety, health, or morals of the community." *Mugler* v. *State*, 123 U. S. 664, 8 Sup. Ct. Rep. 273. And yet in the case last cited the federal supreme court said: "Undoubtedly the state, when providing by legislation for the protection of the public health, the public morals, or the public safety, is subject to the paramount authority of the constitution of the United States, and may not violate rights secured or guarantied by that instrument," 123 U. S. 663, 8 Sup. Ct. Rep. 298. *Powell* v. *Pennsylvania*, 127 U. S. 686, 687, 8 Sup. Ct. Rep. 992, 1257; *Railway Co.* v. *Minnesota*, 134 U. S. 458, 10 Sup. Ct. Rep. 462.

But the problem for solution is not whether the police power of the state be free from the restraints of the federal constitution, but whether it be unchecked and unqualified by the positive inhibitions of the state constitution. Upon this issue, obviously, the adjudications of the federal supreme court are of no relevancy or authority; because a supposed conflict between a state statute and a state constitution raises no federal question, and so is not within the scope of the federal jurisdiction. The police power comprehends legislation for the public health, the public safety, the public morals, and the public welfare; in short, the police power is an equivalent term for the legislative power. *Gibbons* v. *Ogden*, 9 Wheat. 203. In view, then, of the vast, and indeed otherwise boundless, extent of the police power, to affirm that it is unaffected by the limitations of the constitution—in other words, that it is legislative despotism—is to propound a palpable absurdity. Subject to the restraints of the constitution, the police power is necessarily fettered by the express and peremptory prohibition against a deprivation of property without due process of law, and the taking of property for public use without compensation. And so are the authorities. "Another class of cases is referred to and relied upon by the counsel for the city, in which the right of municipal governments to interfere to some extent with private property in the execution of police regulations for the safety or health of the public has been acknowledged. But none, I think, go to the extent of authorizing private property to be taken or destroyed for the public benefit without compensation made therefor." ALLEN, J., in *Clark* v. *Mayor*, 13 Barb. 36. "The police power has never yet been fully described, nor its extent limited, fur-

ther, at least, than this: It is not above the constitution, but is bounded by its provisions, and, if any franchise or liberty is expressly protected by any constitutional provision, it cannot be destroyed by any valid exercise by the legislature or the executive of the police power." PECKHAM, J., in *People* v. *Gillson*, 109 N. Y. 400, 17 N. E. Rep. 343. "The limit to the exercise of the police power can only be this: The legislation must have reference to the comfort, the safety, or the welfare of society, and it must not be in conflict with the provisions of the constitution." Potter's Dwar. St. 458. "I have no doubt but what the property and rights of the plaintiff, the existence of which is at stake in this case, are shielded by the constitution from the threatened aggressions of the defendant, and that it is the duty of courts implicitly to assert and maintain the fundamental law in respect thereof, so that every person may know that the rights of property exist by no uncertain tenure, and that the arm of the law is strong to protect, and will protect, every citizen in the enjoyment of life, liberty, and property." SHELDON, J., in *Babcock* v. *City of Buffalo*, 1 Sheld. 344, affirmed 56 N. Y. 268. "The police power, however broad and extensive, is not above the constitution. When it speaks, its voice must be heeded. It furnishes the supreme law, the guide for the conduct of legislatures, judges, and private persons, and, so far as it imposes restraints, the police power must be exercised in subordination thereto. * * * The power is not without limitations, and in its exercise the legislation must respect the fundamental rights guarantied by the constitution. If this were otherwise, the power of the legislature would be practically without limitation." EARL, J., in *Re Jacobs*, 98 N. Y. 108, 110; *People* v. *Marx*, 99 N. Y. 377, 2 N. E. Rep. 29. "It is the acknowledged right of the states of the Union to control their purely internal affairs, and in so doing to protect the health, morals, and safety of their people by regulations that do not interfere with the execution of the powers of the general government, or violate rights secured by the constitution of the United States. * * * If a statute purporting to have been enacted to protect the public health, the public morals, or the public safety * * * is a palpable invasion of rights secured by the fundamental law, it is the duty of the courts to so adjudge, and thereby give effect to the constitution." HARLAN, J., in *Mugler* v. *State*, 123 U. S. 659, 661, 8 Sup. Ct. Rep. 273. As the statute in controversy involves a deprivation of property without the consent of the owner and without compensation, it is void, and so inoperative to impose the penalty for the enforcement of which the action is instituted.

3. Assuming, for argument, that the expenditure exacted of defendant would not be a taking of property, if imposed in due exercise of the police power, the question is, was the act in controversy a legitimate exercise of that power? Not every pretense of solicitude for the welfare of the community, apparent on the face of a statute, will validate it as an exercise of the police power. In any case, the question is still before the court whether, in its scope and nature, the act be a true exertion of the police power of the state. No matter how plausible the professions of the statute, nor how benevolent in motive or beneficent in effect, to be a legitimate act of police power it must, if the public health be its ostensible object, exhibit some relation to that object and some tendency to promote it. "Courts must be able to see, upon perusal of the enactment, that there is some fair, just, and reasonable connection between it and the public health. Unless such relation exist, the enactment cannot be upheld as an exercise of the police power." *People* v. *Gillson*, 109 N. Y. 401, 17 N. E. Rep. 343. "Under the mere guise of police regulations, personal rights and private property cannot be arbitrarily invaded, and the determination of the legislature is not final and conclusive. If it passes an act ostensibly for the public health, and thereby destroys or takes away the property of a citizen, or interferes with his personal liberty, then it is for the courts to scrutinize the act, and see whether it

really relates to and is convenient and appropriate to promote the public health." *In re Jacobs,* 98 N. Y. 110; *Mugler* v. *State,* 123 U. S. 661, 8 Sup. Ct. Rep. 273; *Powell* v. *Pennsylvania,* 127 U. S. 686, 8 Sup. Ct. Rep. 992, 1257. "Powers which can only be justified as an exertion of the police power of the state, and which would otherwise be clearly prohibited by the constitution, can be such only as are so clearly necessary to the safety, comfort, and well-being of society, or so imperatively required by the public necessity, as to lead to the necessary and satisfactory conclusion that the framers of the constitution could not, as men of ordinary prudence and sagacity, have intended to prohibit their exercise in the particular case, notwithstanding the language of the prohibition would otherwise include it." CHRISTIANCY, J., in *People* v. *Jackson, etc., Co.,* 9 Mich. 285.   "We have been unable to find in any of the decisions the doctrine that legitimate police regulations will extend to matters conducive to the convenience of the public, when they conflict with the recognized rights of other parties." *State* v. *Noyes,* 47 Me. 189, 213.

Applying the criterion thus propounded to the statute in question, in connection with the facts of the case, it is evident, beyond dispute, that the statute is not a legitimate exercise of the police power of the state.  It is not pretended that the houses of defendant in their present condition constitute a nuisance, or that in any way or to any degree they impair the health either of the public or of the occupants.  On the contrary, the uncontroverted proof is that the lack of water on the floors is "not bad for the health of the tenants."  There is no evidence, nor can the court judicially know, that the presence and distribution of water on the several floors will conduce to the health of the occupants; but so far the contrary that sanitary science now admonishes of the danger to health from the possible escape of noxious gas. The uncontradicted proof shows already a sufficient and easily accessible supply of water on the premises; so that the required conduct of water up to the floors serves no other purpose than the convenience of the tenants.  There is no necessity for legislative compulsion on a landlord to distribute water through the stories of his building; since, if tenants require it, self-interest and the rivalry of competition are sufficient to secure it.  The consequences involved in a principle furnish an infallible test of its validity.  When it leads necessarily to an absurd result, it cannot be sound.  Now, if it be competent for the legislature to impose an expense on a landlord in order that tenants may be furnished with water in their rooms instead of in the yard or basement, at what point must this police power pause?  If the convenience of tenants be a sufficient reason for the exercise of the power, why may it not be employed to compel the accommodation of tenants with the appliances of gas or electric light, or with a supply of fuel as well as of water, or with any, even the most costly, accessories of comfortable life in a tenement-house? Once discard the recognized condition that the thing required be reasonably necessary and apparently conducive to health, and no conceivable limitation restrains the power of the legislature to impose burdens upon property for the benefit of others.  From the facts in evidence the inevitable conclusion is this: either the statute is applicable to the case or it is not.  If applicable, then the statute is an unwarrantable exercise of the police power.  Authorities *supra.*  If inapplicable, then the statute gives the plaintiff no right to the penalty for which it sues.  *City of Rochester* v. *Simpson,* (Sup.) 10 N. Y. Supp. 499.  In either event, no cause of action is available against the defendant, and the verdict is invalid.  The conclusion to which the legal argument conducts us is all the more satisfactory because of its consistency with the genius of our institutions, and its tendency to strengthen the securities of property, effects of which a contrary conclusion would be plainly destructive. The postulate upon which the legislation in question proceeds is the duty of government to exercise a paternal protectorate over the people; whereas the distinguishing characteristic of the American commonwealth is that it re-

stricts the operation of government to the narrowest possible sphere, and re-poses upon individual intelligence and effort for the development of a free and fruitful civilization. A conclusion contrary to the present decision would involve the essential principle of that species of socialism under the *régime* of which the individual disappears, and is absorbed by a collective be-ing called the "state,"—a principle utterly repugnant to the spirit of our po-litical system, and necessarily fatal to our form of liberty. Exceptions sus-tained, and new trial ordered, costs to abide the event. All concur.