THE  BOARD  OF  HEALTH  OF  THE  CITY  OF  YONKERS, Respondent, *v.* JOHN COPCUTT, Appellant.

In an action to recover the penalty imposed by the sanitary code of the city of Yonkers, for the maintainance of a nuisance, the original draft of the code which was before the board of health of the city was not produced, it having been destroyed in the process of publication. Plaintiff produced the proofs of publication filed in the office of the board, which contained a complete copy of the code, as adopted and published, with the signature of the secretary of the board. It was also shown that the code as published was correctly printed in a volume produced, at the end of which appeared the statement, signed by the secretary, that the same was adopted by the board at a date stated. *Held,* that the evidence authorized a finding that the board established the code ; and that the same was duly subscribed by its secretary and was duly adopted, approved and published.

Also, *held,* that under the provisions of the charter of said city (§ 2, tit. 9, chap. 184, Laws of 1881) giving to its board of health all the powers then or thereafter conferred upon such boards by any general law, and under the general act for the preservation of the public health (Chap. 270, Laws of 1885), the said board of health had power to pass a general ordinance against the maintainance of public nuisances and to impose a penalty for its violation, to be recovered by action brought by the board ; also that the said city is not exempted from the operation of the general law by the terms thereof.

The complaint alleged, in substance, that defendant maintained a dam and pond in said city in such a condition as to be dangerous to public health, and to render the air and water unwholesome, and continues to support and retain the same in that condition. The court found, upon sufficient evidence, that the waters of the pond are stagnant and filled with decomposed and decomposing vegetable matter; that when the waters are drawn down and the sides and bed of the pond exposed, noxious and poisonous exhalations arise, dangerous to life and health. *Held,* that a finding was justified that the pond and dam were a public nuisance ; also, that the fact that the dam and pond had been so maintained many years did not sustain a plea of the Statute of Limitations.

The dam had been partially torn down, pursuant to a warrant issued by the board. That body passed an ordinance reciting that defendant had threatened to and was about to rebuild the dam, and ordering him to refrain from rebuilding, and to remove all obstructions to the flow of the water. It appeared that defendant had at that time begun to rebuild, and so had obstructed the flow of the water. Defendant refused to comply with the ordinance. *Held,* that the facts justified a recovery of the pen-

alty fixed by the sanitary code, and also a judgment restraining defendant from rebuilding the dam.

Also, *held*, that the fact that the ordinance was passed without notice to defendant, and an opportunity to be heard, did not invalidate it; that no notice or hearing was necessary.

Defendant claimed that the granting of an injunction was improper, because when the dam was built the stream was clear, and water pure, and that its pollution was caused by the acts of others. *Held*, untenable, both because it appeared and was found that defendant participated in the acts creating the nuisance, and as the dam and pond were his property, it was his duty to keep them clean and safe, or to dispense with them if he could not, upon receiving, as it appeared that he had, a proper official request so to do; that he having for a year after receiving an order to clean the pond, neglected and refused so to do, the board was not required to clean it, and the dam having been destroyed, it was entitled to an injunction restraining its rebuilding.

(Argued October 24, 1893; decided November 28, 1893.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made July 28, 1893, which modified and affirmed as modified a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

This action was brought by the board of health of the city of Yonkers to recover penalties under the provisions of the sanitary code of said city (§ 82) and for an injunction.

The complaint contained three counts. It alleged in substance that the defendant owned a dam upon the Nepperhan river in said city, and also owned a pond formed by said dam and lots adjacent thereto; that he had for a long time maintained and continues to maintain said pond in such a condition as to be dangerous to human health and as to render the air and water unwholesome, in violation of section 82 of the sanitary code; that defendant had refused to comply with a resolution passed by plaintiff requiring him to remove said dam, but had continued to further obstruct said river and threatened to continue doing so; that he had neglected and refused to comply with a resolution of plaintiff requiring said dam to be abated as a public nuisance, and to refrain from building a dam (the former having been partially

destroyed under a warrant issued by plaintiff), and from recreating, continuing or retaining said pond, and had neglected and refused to remove the obstructions from the river at the place where the dam had been, and to abate and remove the nuisance theretofore existing thereat. Judgment was asked for the amount of three penalties and for an injunction perpetually restraining defendant from obstructing the free, natural flow of the Nepperhan river in said city, and from rebuilding said dam and recreating, continuing or retaining the pond supported by said dam, and from supporting, continuing or retaining said pond or dam or condition in said river, so as to be dangerous to human health and as to render the air and water unwholesome, and also that defendant be directed forthwith to clean out and wall up the channel of said river and provide a stone dam, and fill in with solid earth the low places upon his land adjacent to said river.

A judgment was rendered in favor of plaintiff upon all the counts. As to the first and third causes of action set up in the complaint, it was affirmed by the General Term and reversed as to the second. No appeal was taken by plaintiff.

Further facts are stated in the opinion.

*Calvin Frost* for appellant. The powers of the board of health are given by the charter of the city of Yonkers. (Laws 1881, chap. 184, tit. 9, § 2.) The words "in addition to the powers herein expressly granted, to have and exercise all the powers now or at any time hereafter conferred upon boards of health in cities, by any general law," contained in said section 2, did not give any additional powers, as there is only one general law relating to boards of health in cities, and that was enacted afterwards, in 1885 (Chap. 270), and that act expressly excepts the city of Yonkers (§ 1). The legislature in plain terms prescribes what shall be done by the board of health in order to impose a duty. It was incumbent on the plaintiff to show compliance with these statutory requirements. (Sanitary Code, §§ 79, 80, 81.) The plea of the Statute of Limitations is good. (Code Civ. Pro. § 387.) As to the third cause of action,

the board of health has no power to declare in advance, what will create a nuisance which will endanger the public health, only the power to declare what is such nuisance, or even the semblance of power to require any person to make improvements or expenditures to prevent the recurrence of such nuisance, or to prevent the erection of a structure which may create such nuisance. It was error to admit in evidence the ordinance made December 7, 1892, as the foundation of a cause of action without proof that notice of hearing upon the subject of it had been given to Mr. Copcutt. (*People* v. *Wood*, 62 Hun, 131 ; *People ex rel.* v. *Board of Health*, 58 id. 595.) Even if the complaint and ordinance had been sufficient for the purpose, and the board was clothed with ample powers in the premises, it is insisted that the part of the judgment which restrains the defendant from rebuilding his dam, which had been torn down, and ordering him to clear out all other obstructions from the stream, cannot be sustained. (Cooley's Const. Lim. 343 ; *In re Jacobs*, 98 N. Y. 110–112 ; *People* v. *Gillson*, 109 id. 389 ; *City of Rochester* v. *Simpson*, 57 Hun, 36 ; *Babcock* v. *City of Buffalo*, 56 N. Y. 268 ; *Lawton* v. *Steele*, 119 id. 239.) The plain duty of the board was to clean the ponds by taking out the deposits, and not by destroying the defendant's property and depriving him of a water power which supplied eighteen or twenty manufactories, which he rented to his tenants. (Laws of 1881, chap. 184, tit. 9, § 2 ; *Comm.* v. *Patch*, 97 Mass. 203 ; *City of Rochester* v. *Simpson*, 57 Hun, 36 ; *Babcock* v. *City of Buffalo*, 56 N. Y. 256.) The court erred in refusing to find that the city of Yonkers had permitted, by means of drains or sewers, or both, the dirt and refuse of its public streets to empty and be discharged into the Nepperhan river at points higher up the stream than the dam and pond at defendant's first water power. (*Babcock* v. *City of Buffalo*, 56 N. Y. 268.) The court erred in refusing to find that the defilement of the stream by the Smith Carpet Works has contributed to produce the same nuisance. (Code Civ. Pro. §§ 993, 1023 ; *Kennedy* v. *Porter*, 109 N. Y. 521.) The court erred in refusing defendant's requests as to the cost of cleaning out

the pond and the erection and running of an engine to supply the power which would be lost by preventing the reconstruction of defendant's dam, which had been destroyed by the board of health, and against doing which the court enjoined defendant. (*City of Rochester* v. *Simpson*, 57 Hun, 39.)

*James W. Hunt* for respondent. The judgment as to the first cause of action was properly affirmed. (Laws of 1881, chap. 184, § 2; *Gould* v. *City of Rochester*, 105 N. Y. 46; *Adams* v. *Popham*, 76 id. 410.) The judgment as to the third cause of action was properly affirmed. (Laws of 1881, chap. 184, § 2; Laws of 1885, chap. 270, § 3; *Gould* v. *City of Rochester*, 105 N. Y. 46; *Board of Health* v. *Heister*, 37 id. 661.)

FINCH, J. The first cause of action against the defendant, stated in the complaint of the board of health, was for a violation of the sanitary code of the city of Yonkers, adopted in 1881, and the recovery of a penalty imposed for such violation.

The defendant, seeking a reversal of the judgment rendered against him for such penalty, contends that the sanitary code was not proved because not shown to have been subscribed by the secretary of the board of health. The original draft of the code which was before the board for adoption, and upon which that body acted, was not produced and could not be produced, because it was destroyed by the printers in the process of publication; but the plaintiff did produce the proofs of such publication filed in the office of the board, and those proofs contain a complete copy of the code as adopted and published. That copy purports to be signed by the secretary of the board, and was attested by such signature as published. There was no proof that the original was not signed, but it was shown that the sanitary code as published was correctly printed in a volume produced, at the end of which appeared the words: "Adopted by the board of health, September 5th, 1881. W. H. Doty, secretary." On this state of facts the court found that "the plaintiff, on the 5th day of September,

1881, established its sanitary code, the same being duly sub-
scribed by the secretary of said board, adopted, approved and
published." That finding, having sufficient evidence in the
record to support it, is a finding of fact which we may not
on this appeal convert into a question of law.

The appellant further suggests the inquiry whether the
board of health can maintain an action for the penalty upon a
general enactment against all public nuisances, such as is sec-
tion 82 of the Code. That section provides that "whatever is
dangerous to human life or to health  *  *  *  and what-
ever renders the air or food and water or drink unwholesome
shall be deemed to be nuisances and to be illegal, and every
person having aided in creating or contributing to the same,
or who may support, continue or retain any of them shall be
deemed guilty of a violation of this section." The manner of
enforcing the provision is dictated by section 97, which imposes
a penalty for its violation, which may be recovered with costs
"in an action brought by said board of health in its name in
any court of competent jurisdiction." The charter of the
city (Chap. 184, Laws of 1881, title 9, § 2), authorized the
board to enact a sanitary code, and impose penalties for its
violation, and to maintain actions for the recovery of such
penalties. In addition the charter gave to the board of health
of the city " all the powers now or hereafter conferred upon
boards of health in cities by any general law." Such a gen-
eral law was enacted afterwards (Laws of 1885, chap. 270),
which authorized the imposition of penalties for the violation
of or non-compliance with not only the orders of such a board,
but also its regulations, and to maintain actions to collect such
penalties. The learned counsel for the appellant maintains
that the city of Yonkers was excepted from the operation of
the general law. That is true so far as it relates to the com-
position of the board and appointment of its members (§ 1),
but is not true, as to the general powers conferred upon the
boards of health when organized. (§ 3.) At that point the
excepted cities are named, but Yonkers is not one of them.

There was ample authority, therefore, for the maintenance of the action.

There is nothing in the defendant's plea of the Statute of Limitations. He maintained the nuisance and neglected and refused to abate it down to the time of the destruction of his dam, and this action was commenced a few days later. It is said, however, that the complaint does not allege, and the proof does not show, that the dam and pond in and of themselves had become a nuisance, and so their maintenance down to the time of the commencement of the action does not answer the plea of the statute. The complaint alleges that the defendant maintained the dam and pond in such a condition as to be dangerous to human health, and to render the air and water unwholesome, and continues to support and retain the same in that condition. The trial judge found that the waters of the pond are stagnant and filled with decomposed and decomposing animal and vegetable matters; that when the waters are drawn down and the sides and bed of the pond are left exposed and bare, there arise noxious and poisonous exhalations which taint the air and are dangerous to life and health; and that "the said pond with its contents so retained by the said dam is and constitutes a public nuisance detrimental to the public health." There is evidence to support this finding, even irrespective of the filth contributed by others than the defendant; proof that the stagnant water, and, when drawn off, the exposure of the sides and bed of the stream, tend to produce vile and malarious exhalations, and these are intensified by the accumulation of filth which no police vigilance could keep out of the stream, and which the dams retained and held. I deem it impossible upon the proof and the findings to exempt the maintenance of the pond and dam from the charge of being a public nuisance.

We come now to the third cause of action, the second having been defeated by the General Term and the plaintiff having submitted to the decision by omitting to appeal from it. That third cause of action was to recover a penalty for a violation of the ordinance of the board of health, passed December

7, 1892. That ordinance recited that the dam had been partially torn down pursuant to a warrant issued by the board, and that the defendant threatened and was about to re-build the dam and re-create the pond, which, if restored, would be a public nuisance; and then ordered him to refrain from building the dam and re-creating the pond, and directed him to remove all obstructions to the flow of the water. We have already said that the findings of the court declared the dam and the pond as existing facts to be a public nuisance, and that obstructions at that point could not exist without endangering the public health. As such the dam had been partially torn down, and the defendant had not only threatened to re-build but had actually commenced the work by putting obstructions in the stream interfering with the free flow of the water. He was, therefore, engaged in the very act of creating a nuisance, and was ordered to desist. That order he disobeyed, and now seeks to justify his disobedience, and avert the two remedies of a fine and an injunction, upon several grounds.

The first is quite narrow and technical. It is in substance that the board had no power to declare in advance that a future construction would be a nuisance. It is apparent that the facts do not raise that question by itself so far as the action for the penalty is concerned, because the board had many times declared a dam and pond in the river at that point to be a nuisance, and the court has so found as a fact. So far as defendant had put obstructions in the stream he had created a nuisance, less in degree than the old dam, but of the same character and effect. He was ordered to remove such obstructions, and refused, and that fact alone will sustain the judgment for the penalty. But beyond that, I think the board had power to prevent a re-construction and a re-instatement of what it had declared to be, and what the court has found in fact was, a public nuisance. The question, however, may conveniently be reserved until we reach the argument made against the injunction which was granted.

The appellant also objects that the ordinance which was directed against him specially and affected his property rights,

was invalid, because passed without notice to him, and an opportunity to be heard. In another phase of this case, coming to us on certiorari for a review of the action of the board, we have decided that a hearing was not necessary, because the question of nuisance or not lies at the foundation of the jurisdiction, and the party proceeded against may always try that vital and decisive question in the courts, and is not foreclosed by the order made. This case well illustrates the doctrine in actual operation. The plaintiff did not rely on its orders or ordinances alone, or the presumptions which they raised, but proceeded to allege and prove that the dam and pond were a public nuisance. The defendant took issue upon that, and the battle was fought out over that question. The defendant has had his day in court, ample and abundant chance to be heard, better and more complete than any hearing which the board could give. But we have already decided the question adversely to the defendant's contention, and nothing needs to be added to the discussion which it has received.

We come now to the final point of the appellant's argument, which is a contention that no injunction should have been granted, and that the one allowed should be set aside.

In a large class of cases the writ of injunction is a preventive remedy. It issues often and promptly where the defendant threatens or is about to do some act of such a character that no legal action can furnish adequate redress. It implies the danger of a future injury, and very frequently has been used to check and prevent an apprehended nuisance. Even where a statute provided specially for the removal of a nuisance, the People were not compelled to await its completion, but were awarded an injunction to restrain the further erection, and compel the removal so far as erected. (*People* v. *Vanderbilt,* 24 How. Pr. 301 ; 26 N. Y. 287.) Beyond the general jurisdiction, we have in this case the fact that both by the charter of the city of Yonkers and the provisions of the General Health Act, the boards may avail themselves of the remedy by injunction. In that fact is necessarily involved the power of such boards to prevent the erection and creation

of a nuisance, and so their right to determine what will be a nuisance and interfere to stop it.  Certainly in a matter so serious as that of the public health they ought not to wait until some citizen is sick or dead before they prevent or abate the nuisance tending to the injurious result.

The appellant, however, further argues that this is not a case in which it is reasonable or just to grant the remedy, and his contention is in substance, that when he built the dam the stream was clean and the water pure; that he never did anything to pollute it or make it dangerous to health; that it came into that condition from the acts of others, made possible by the negligence of the city authorities; and that his property is destroyed and he is forbidden to restore it without any fault of his own.  But the court below has found as a fact that he did participate in creating the actual condition of things which menaced the public health, and there is evidence tending to show that he erected and maintained closets which emptied into the stream.  That finding furnishes one answer to his plea of absolute innocence.  But this dam and pond were his.  He had a right and it was his duty to keep them clean and safe, or dispense with them entirely if he could not.  His dam was a pocket to catch and hold all filth thrown in above.  He well knew it and could not sit still and suffer his own property to become an intolerable nuisance and say it was not his fault.  When pestilence is forcing a way into our harbors, and danger and death approach through all rot and filth, it is the condition with which boards of health must grapple, and the condition which must be abated or removed, without regard to the question who caused the trouble.  Thus in *Wenzlick* v. *McCotter* (87 N. Y. 127), it was said by Danforth, J., as to the position of an owner of land upon which a third party should wrongfully enter and erect a nuisance, that "in such a case the owner would not be liable either for the erection of the nuisance or its continuance until he was requested to abate it.  *  *  *  As if the defendant simply suffer a dam, erected upon his land by a former owner, to remain, without being used by him, it is no continuance of

the nuisance unless he first be requested to remove it." That is to say, however innocent he may be in creating the condi- tion or maintaining it, he is bound to abate it upon the proper official request, and, if he refuses, becomes at once responsible for the existing condition as continuing a nuisance which it was his right and his duty to remove and suppress. Again and again the defendant was notified by the board of health that his dam and pond had become a public nuisance and endangered the health of the city. The trial judge finds that formal notice of the fact was given to the owner in September, 1891, accompanied by an order to abate the evil. In December of that year he was again warned that if the pond was not cleaned before February of 1892, the board would cause the nuisance to be abated. It was not till October of that year that the board ordered the destruction of the dam, and not until December that the order was executed. For more than a year he refused to make his own property clean and safe, and for the sake of his private interest neglected his public duty, and left the city's health in peril. And now he complains that the board should have cleaned his pond and not destroyed the dam. He had the opportunity to clean it himself, but chose to refuse and stand defiantly in the maintenance of his basin of filth. I think there was full jurisdiction to grant the injunction, ample occasion for it and no error in awarding the writ. In *City of Rochester* v. *Simpson* (57 Hun, 36), to which we are referred, there was no proof that the pond contained water which was stagnant or impure, or that the existence of the pond was in any manner detrimental to the public health. In *Babcock* v. *City of Buffalo* (56 N. Y. 268), a slip in the canal was ordered to be filled up because it had become foul, and this court held that, as it could have been dredged and cleaned at moderate expense, the filling should stop. Here the dam has been torn down, whether rightfully or not is a question not before us. If that was a wrongful act, the defendant has his remedy. The *Babcock* case may have some bearing upon the inquiry whether the mode of abating the nuisance here involved was reasonable or

proper, but has very little bearing upon the question whether the defendant should be permitted to rebuild his dam and restore a nuisance already abated.  The proof here is that all these dams and ponds in the heart of the city are an inevitable menace to the public health and cannot safely be allowed to exist.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.