NEW-YORK,
May, 1836.

MEEKER vs. VAN RENSSELAER.

Meeker
v.
Van Rensse-
laer.

A dwelling house, cut up into small apartments, inhabited by a crowd of
poor people, in a filthy condition, and calculated to breed disease is a *pub-
lic nuisance*, and may be abated by individuals residing in the neighbor-
hood, by tearing it down, especially during the prevalence of a disease
like the *Asiatic cholera*.

*Parol evidence* of the acts of a *board of health* of a city in directing the abate-
ment of *nuisances* is not admissible ; it should consist of *written minutes*
of the proceedings, or *written orders* of the board.

THIS was an action on the case tried at the Albany circuit
in March, 1833, before the Hon. JAMES VANDERPOEL, one of
the circuit judges.

The declaration charged the defendant with pulling down
five dwelling houses. On the trial it appeared that the dwell-
ing houses consisted of one building, originally erected as a
tan-house, 70 feet long, 12 feet high, which was divided into
five apartments. These apartments, during the summer of
1832, while the *Asiatic cholera* prevailed in Albany, were in-
habited, as one witness stated, by between 40 and 50, and as
another stated, by between 60 and 80 Irish emigrants, each
apartment containing two or three families. The premises
were extremely filthy ; under the floors were 20 *tan vats*, most
of which were filled with putrid stagnant water, which oozed
through the floors on walking over them ; some of the in-
mates were sick, and two, a woman and a child, laying dead
in the house. The premises were situate in the fifth ward of
the city, in which ward the defendant, being at the time an
*alderman*, resided. The inmates of the dwelling were re-
quested to remove to temporary buildings erected by the cor-
poration, in a healthy part of the city, and were told that
their luggage would be taken there free of expense. They
refused, and the defendant directed the buildings to be torn
down, which was done accordingly. Several witnesses testi-
fied that the premises were a nuisance, which could be abated
in no other way than that resorted to. The defendant prov-
ed that the *board of health* of the city had directed the nui-
sance to be abated ; to this proof the plaintiff objected, insist-

NEW-YORK,
May, 1836

Meeker
v.
Van Rensse-
laer.

ing that the *minutes* of the board or *written evidence* of their orders should be produced : the objection was overruled, and *parol evidence* was received. The plaintiff also objected to the proof given of the *request* to the inmates of the building to remove ; which objection was overruled.   The plaintiff inquired of a witness whether there were not many other buildings in the city, similarly situated with those destroyed, in which the cellars had been drained  and other measures resorted to for their purification, and whether any other buildings had been torn down.   To this inquiry the defendant objected, and the objection was sustained.   The judge charged the jury, if they should find that the building torn down was a nuisance, and that the defendant resided in the neighborhood and had done no more than what was necessary to abate it, that they ought to find a verdict in his favor ; but if they should find that the building was not a nuisance, then the defendant was liable to damages. The jury found a verdict for the defendant. The plaintiff asked for a new trial.

*M. T. Reynolds*, for the plaintiff.

*J. Van Buren*, for the defendant.

*By the Court*, SAVAGE, C. J.   It was not denied upon the trial that the building torn down was a common nuisance, nor was it upon the argument.   It may not be improper, however, to refer to the cases collected in *Bacon's Abr. tit. Nuisance*, to see what has been adjudged a nuisance.   It may be proper to remark that a nuisance is an annoyance ; any thing that worketh hurt, inconvenience or damage.   *Jacob's Law Dict.* It is a common nuisance indictable to divide a house in a town for poor people to inhabit in, by reason whereof it will be more dangerous in the time of sickness and infection of the plague. 2 *Rolle's Abr.* 139. So manufactures, lawful in themselves, may become nuisances, if erected in parts of towns where they cannot but greatly incommode the inhabitants and destroy their health.   Whether the houses of the plaintiff were of that description, was fairly left to the jury by the judge in his charge.   A more offensive nuisance cannot be imagined than the buildings described by the witnesses in this case.

The first exception taken on the trial was, that the witness should not have been asked whether the inhabitants were not requested to leave the buildings before they were pulled down. The object of the inquiry no doubt was, to show that the conduct of the defendant was not wanton, but that he was influenced by considerations of the public good, and not of private injury to the plaintiff. The question was proper and unexceptionable.

It was objected that parol evidence should not have been received of the orders of the board of health. This objection was well taken. The board of health is a tribunal created by statute, clothed with large discretionary powers; and being a public body, its acts should be proved by the highest and best evidence which the nature of the case admits of. Every proceeding of a judicial character must be in writing. It is not to be presumed that minutes of their proceedings are not kept by such a body, and that determinations which seriously affect the property of individuals, were not reduced to writing, but rest in parol. In the case of *Wormer* v. *The City of Albany*, *ante* 262, the minutes of the proceedings of the board were incorporated with the proceedings of the corporation, of which the board of health were members, and were proved by a witness a member of both boards. Here the proof was defective ; but in my judgment it is not material, because the defendant did not need any authority from the board of health. As a citizen of the 5th ward, who desired to preserve the public health, and especially as an alderman, he was fully justified in every act done by him.

It was also objected that proof should have been received of other modes of abating nuisances, than by pulling down houses. Such proof would have been wholly irrelevant. The proof in this case, from the plaintiff's own witness, was, that there was no other way to correct the evil but by pulling down the building. Had it been proved that in the case of other nuisances draining or filling up had been resorted to, such proof would not have contradicted the testimony in this cause. In my opinion a new trial should be refused.

New trial denied.