## CITY OF YONKERS v. FEDERAL SUGAR REFINING CO.

(Supreme Court, Appellate Division, Second Department. March 4, 1910.)

1. NUISANCE (§ 62*)—PUBLIC NUISANCE—INJURY TO PEDESTRIANS.

Smoke, soot, dust, and cinders from defendant's plant, falling in the streets, is not a public nuisance, though on occasions soot and dust fell on pedestrians and got in their eyes, but no injury or even discomfort resulted therefrom, and the streets were not made unsafe, or the health of the public affected.

[Ed. Note.—For other cases, see Nuisance, Cent. Dig. §§ 153–156; Dec. Dig. § 62.*]

2. MUNICIPAL CORPORATIONS (§ 623*)—PUBLIC NUISANCE—INJUNCTION—MUNICIPAL CORPORATION—RIGHT TO SUE.

Yonkers City Charter (Laws 1895, c. 635, tit. 6) § 6, subd. 35, gives the city council power to determine public nuisances and to restrain or abate the same, and provides that the council may cause any public nuisance to be abated by any officer it may direct. Held, that in the absence of any regulatory ordinance declaring defendant's manufacturing plant a public nuisance because of the smoke, soot, dust, etc., issuing therefrom, or determining generally what constitutes public nuisances, the city was not authorized to sue as agent for the state to restrain the operation of defendant's plant as a public nuisance.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1374; Dec. Dig. § 623.*]

3. NUISANCE (§ 71*)—PUBLIC NUISANCE—ABATEMENT.

Where a nuisance is exclusively common or public, it cannot be lawfully abated at the suit of a private individual or corporation, the remedy being by indictment or criminal prosecution, or under some circumstances by a suit in equity on behalf of the sovereign power, either through the Attorney General, or some agent to whom the sovereign power has been delegated.

[Ed. Note.—For other cases, see Nuisance, Cent. Dig. § 163; Dec. Dig. § 71.*]

4. MUNICIPAL CORPORATIONS (§ 623*)—PUBLIC NUISANCE—ABATEMENT—ACTION BY MUNICIPALITY.

Since a corporation, whether municipal or otherwise, can only be injured in respect of its property rights, a municipal corporation, in order to maintain a suit in equity to abate a nuisance, must show some special injury to property owned by it, or for which it stands in some trust relation for the benefit of its own citizens or the public generally; it being insufficient that private property of a citizen may be injured or affected thereby, and it being, as to such property, only a governmental agent.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1374; Dec. Dig. § 623.*]

Hirschberg, P. J., dissenting.

Appeal from Special Term, Westchester County.

Suit by the City of Yonkers against the Federal Sugar Refining Company to enjoin the maintenance of a nuisance. Judgment for plaintiff, and defendant appeals. Reversed, and new trial granted.

Argued before HIRSCHBERG, P. J., and WOODWARD, BURR, THOMAS, and RICH, JJ.

Charles Philip Easton, for appellant.

Thomas F. Curran, for respondent.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

BURR, J. This action is brought to enjoin the maintenance of a nuisance. The particular act of the defendant complained of is causing or allowing "black smoke, soot, dust, and cinders to escape from its smokestack and to pass over, upon, and through the streets and public places of the said city of Yonkers, or upon the property and persons of the residents thereof." There is a finding of fact that the smoke, containing particles of dust, soot, and cinders, is carried by the wind at certain times over the property of the inhabitants of the city, that it enters their houses and apartments and "falls upon them and their property, and upon the streets and public places of the plaintiff." There is a further finding that it renders it "uncomfortable, disagreeable, and annoying for persons to remain out of doors on their own premises, or to pass along said public streets."

Although very many witnesses were called by the plaintiff, and although a large amount of testimony was taken, constituting a printed record of several hundred pages, scarcely any of such testimony related to any discomfort or annoyance upon any public street or place. Several of the witnesses testified that they never noticed anything in the shape of dust, soot, or cinders which fell from the smoke upon the public street. Some of the witnesses testified that there was a considerable amount of dust resulting therefrom, which laid in the streets and upon the sidewalks, and some witnesses testified that upon occasions, while upon the public street, particles of soot or dust fell upon them and upon their clothing and got into their eyes; but there is no evidence of any injury or even discomfort resulting therefrom. As one of the witnesses testified, it did not interfere with his sight at all, that he "rubbed it out." There was no evidence that the streets of the city were made unsafe or insecure, or that the health of the public while using them was affected, and the evidence with regard to discomfort or annoyance on the part of persons passing over them was of such a slight and trifling character that a court of equity would not be justified for that reason alone in enjoining the carrying on of a large and important manufacturing enterprise, such as that of the defendant, in a portion of the city given over to a considerable extent to manufactures. Wood on Nuisances (3d Ed.) 679; Genet v. Del. & Hudson Canal Co., 122 N. Y. 505, 25 N. E. 922. The evidence of injury to private property was more complete and satisfactory.

The learned counsel for the respondent contends with great earnestness that the acts complained of constitute a public nuisance. Without attempting to define at present the exact line of demarcation between public and private nuisances, if we concede that the evidence establishes the existence of a public nuisance, and that besides being a public it is also a private nuisance, since special injury has resulted to persons in connection therewith, the case is stated most strongly for the plaintiff.

Two questions are presented, therefore, for our determination: First, is there express statutory authority for the maintenance of this action? Second, if not, may a municipal corporation, in the absence of such authority, maintain an action to restrain and enjoin a public nuisance, which also affects the private property of a considerable number of its citizens?

There is no express statutory authority conferred upon the plaintiff to maintain this action. We do not now consider its power in reference to nuisances affecting the public health, since the nuisance complained of is not of such a character. By plaintiff's charter its common council is authorized to determine public nuisances and to prevent, restrain, remove, and abate the same. Laws 1895, c. 635, tit. 6, § 6, subd. 35. By the same section it is also provided that, in addition to its remedies by actions at law or in equity to enforce these powers, the common council shall have power to cause any public nuisance to be abated by any officer it may direct. This language is wholly consistent with a reference to the power which a municipal corporation has to proceed against public nuisances which inflict special injury upon corporate property held by it absolutely or in trust for the public, and the purpose of it manifestly was to designate the particular corporate officers through whose direction such power should be exercised. If the Legislature had intended to create the municipality its agent to exercise a power for the benefit of the public generally, and to enforce a right which belonged to it alone, it would have used far more specific and precise language.

In Village of New Rochelle v. Lang, 75 Hun, 608, 27 N. Y. Supp. 600, it was held by this department that an act, which gave the trustees of the village authority to "prohibit, restrain and prevent" certain acts, gave them no standing in equity to maintain an action not otherwise maintainable by it. The language of the secondary clause of the same section of the charter above referred to does not confer any new powers at law or in equity. It only recognizes those already existing, and, in addition, provides a method of designating an agent to proceed in its behalf for summary abatement. Again, section 6 must be read in connection with section 10 of the same title. While the latter section refers to injunctive relief, it recognizes the principle that, like any other legislative body, the will of the common council must be expressed in the form of ordinances, by-laws, resolutions, or regulations, and that as preliminary to any such relief some ordinance, by-law, regulation, or resolution must be adopted. There is no allegation in the complaint, nor any evidence in the case, that the common council has ever taken any action, under the section of the charter above referred to, either to determine generally what are public nuisances, or that this defendant has committed any such nuisance, and there is an express finding to this effect. If the language of the charter were sufficiently broad to authorize the maintenance of such an action as this (and we think that it is not), some action on the part of the common council would be necessary before the remedy could be invoked. We proceed, therefore, to the consideration of the second of the questions above stated.

A nuisance which is exclusively common or public cannot lawfully be abated at the suit in equity of any private individual or corporation. The remedy is by indictment or criminal prosecution, or, under some circumstances, by an action in equity on behalf of the sovereign power, either through the Attorney General or some other agent to whom the sovereign power has been delegated. Wood on Nuisances (3d Ed.) 975, note; Joyce on Nuisances, § 437; Crowder v. Tinkler, 19 Ves. Jr. 616; Lawton v. Steele, 119 N. Y. 226, 23 N. E. 878, 7 L. R. A.

134, 16 Am. St. Rep. 813; Griffith v. McCullum, 46 Barb. 561; Village of New Rochelle v. Lang, 75 Hun, 608, 27 N. Y. Supp. 600; Village of Hempstead v. Ball Electric Co., 9 App. Div. 48, 41 N. Y. Supp. 124. In Crowder v. Tinkler, supra, Lord Eldon said:

"Upon the question of jurisdiction, if the subject was represented as a mere public nuisance, I could not interfere in this case, as the Attorney General is not a party."

In Lawton v. Steele, supra, Judge Andrews said:

"The best-considered authorities in this country and England now hold that a public nuisance can only be abated by an individual where it obstructs his private right, or interferes at the time with his enjoyment of a right common to many, as the right of passage upon the public highway, and he thereby sustains a special injury. The public remedy is ordinarily by indictment for the punishment of the offender, * * * or by bill in equity filed in behalf of the people."

In Griffith v. McCullum, supra, Justice Marvin states the law applicable to the subject as follows, quoting from Blackstone's chapter on Nuisances:

"No person, natural or corporate, can have an action for a public nuisance, or punish it; but only by the king in his public capacity of supreme governor and pater familias of the kingdom."

He adds that:

"That which is exclusively a common or public nuisance cannot lawfully be abated by the private act of individuals. The remedy is an indictment—a criminal prosecution; unless some other remedy has been provided by statute, as is the case in some of our city and village acts of incorporation."

In Village of New Rochelle v. Lang, supra, an action in equity was brought to restrain defendant from erecting a wooden building within the limits of the village, without having obtained a permit so to do. The court said:

"The injunction was properly denied. We think that the plaintiff had no standing to maintain the action. * * * Even if the act were a nuisance, the remedy was by indictment, or in equity only at the suit of the people or of some private person who alleged special damages."

In Village of Hempstead v. Ball Electric Co., supra, the action was brought to compel the removal of certain poles, wires, and lamps placed within the streets of the village in order to furnish electric light, which had for a long time been wholly disused for illuminating purposes. In that case the court quoted with approval the language of Justice Marvin in the case of Griffith v. McCullum, supra, and of Judge Andrews in the case of Lawton v. Steele, supra, but held that a statutory remedy had been provided through the provisions of the highway law and of the village law.

In the absence of statutory authority making a municipal corporation the agent of the people of the state for that purpose, an action in equity to abate a nuisance will lie in its name only when such action would lie in behalf of any other corporation or of an individual; that is, it must show itself to be a party specially aggrieved, one who has suffered greater injury by reason of the unlawful acts than the public

generally. A corporation, whether municipal or otherwise, can only be injured in respect of its property rights. Therefore to maintain an action in equity in its name to abate a nuisance, a municipal corporation must show some special injury to property absolutely owned by it, or to which it stands in some trust relation for the benefit of its own citizens or the public generally. It is not enough that private property of its citizens may be injured or affected thereby. Its relation to such property is that only of a governmental agent. It is not the owner of, nor has it any trust interest in, nor any duty relating to, such property which makes it the guardian or protector of it. The authorities are not entirely harmonious on this subject; but we believe this to be not only sustained by the greater weight of authority, but to be sound in principle and the only wise and safe rule. Wood on Nuisances (3d Ed.) 743; Trustees of Watertown v. Cowen, 4 Paige, 511, 27 Am. Dec. 80; Mayor of Rochester v. Curtiss, Clarke's Ch. 336; Meeker v. Van Rensselaer, 15 Wend. 397; Attorney General v. Blount, 11 N. C. 384, 15 Am. Dec. 526; Inhabitants of Winthrop v. New England Chocolate Co., 180 Mass. 464, 62 N. E. 969; Township of Belleville v. Orange, 70 N. J. Eq. 244, 62 Atl. 331; Newark Aqueduct Board v. Passaic, 45 N. J. Eq. 393, 18 Atl. 106; Inhabitants of Charlotte v. Pembroke Iron Works, 82 Me. 391, 19 Atl. 902, 8 L. R. A. 828; Township of Merritt v. Harp, 131 Mich. 174, 91 N. W. 156; City of Ottumwa v. Chinn, 75 Iowa, 405, 39 N. W. 670; Dover v. Portsmouth Bridge, 17 N. H. 215.

The learned author of Wood on Nuisances (972) says:

"Therefore a municipal corporation has no control over nuisances existing within its corporate limits except such as is conferred upon it by its charter or by general law."

It may be true that if an act complained of was a nuisance at common law, and one which any person injured thereby might lawfully abate of his own motion, an official of the city might not be liable in damages for the summary abatement thereof; but this would be, as is clearly pointed out in Meeker v. Van Rensselaer, supra, not because of his official capacity, or because his act was in any sense a corporate act, but because he acted as a citizen interested in the maintenance of the health of the city.

In some cases an action has been maintained in the name of the municipality, because of special injury, either to property owned by the corporation or to property to which it stood in a trust relation for the benefit of the public, as a street, square, public park, or navigable stream. In the case of Trustees of Watertown v. Cowen, supra, the action was brought to restrain defendant from erecting a building upon a public square within the boundaries of the village. Chancellor Walworth said:

"Although I do not feel disposed to go the length, in this case, of holding that the legal title to the land is vested in the corporation of the village, yet I can see no valid objection to considering the corporation as the proper representative of the equitable rights of the inhabitants of the village to the use of the public square, so as to authorize the filing of a bill by the corporation, in this court, to protect those equitable rights against the erection of this nuisance."

In Mayor of Rochester v. Curtiss, supra, the court said:

"In cases of intrusion by building upon property dedicated to the public use, as a square, a street, or highway, this court will in a clear case interfere by an injunction to prevent it."

The case of Attorney General v. Blount, supra, was an action originally brought by the inhabitants of the town of Tarborough against the defendant to restrain him from erecting a dam which would cause a stream to overflow its banks so that noxious vapors arising therefrom would materially affect the health of the town. In that case the point was raised that the action could only be brought on behalf of the people, and upon the suggestion of the court the Attorney General was made a party complainant, and the action was allowed to proceed. The distinction is made clear by a consideration of the following cases:

In the case of Inhabitants of Winthrop v. New England Chocolate Co., supra, a bill in equity was filed to restrain defendants from manufacturing chocolate, cocoa, and other like products, on the ground that their manufacturing business was a public nuisance. Defendants demurred, and, among other grounds of demurrer, set up that the relief in equity, if any, upon the ground of a public nuisance, could be had only by proceedings instituted in the name of the Attorney General. The demurrer was sustained and the bill dismissed, and the court said:

"Nor can the plaintiff prevail upon the ground that this establishment is a public nuisance. There are no allegations to show that the town in its corporate capacity receives any damages of a special nature."

In Township of Belleville v. Orange, supra, an action was brought to compel specific performance of an alleged agreement on the part of defendant relative to the use of a sewage system constructed for the benefit of the city through the town. It was claimed that the acts of defendant jeopardized the health of the citizens and inhabitants of the town. The court held, first, that the complainant was not charged by law with any such duties relating to the public health as to entitle it, independent of any contract, to file a bill for protection against a public nuisance common to all its citizens; that the Attorney General alone had that right. The court further held that the contract between the town and the city did not, in the absence of legislative authority, invest the township with the rights which belonged to the Attorney General of other public authorities for the protection of the public interests.

In Dover v. Portsmouth Bridge, supra, which was an action to enjoin the construction of a bridge, the court said:

"The corporation claims to represent and protect the rights of the inhabitants of the town who are owners of property affected by the bridge; but the corporation cannot vindicate any such rights unless it be in some case where a corporate duty exists. Perhaps the town might be heard, in its corporate capacity, where the health of the community was endangered by a nuisance, or where they might otherwise be subjected to expense by reason of pauperism, and in any other case involving corporate responsibility. But nothing of that character appears in this case, and the town cannot maintain the bill on the ground that individual inhabitants are affected in their private interests."

In City of Ottumwa v. Chinn, supra, the Supreme Court of Iowa held that a city could not maintain an action in equity to enjoin and abate a nuisance on the ground of injury to its citizens, since that remedy is given only to any person injured thereby.

The learned counsel for the respondent relies particularly upon two cases decided by the Court of Appeals, which he claims sustain the right to maintain an action of this nature. Village of Oxford v. Willoughby, 181 N. Y. 155, 73 N. E. 677; Village of Haverstraw v. Eckerson, 192 N. Y. 54, 84 N. E. 578, 20 L. R. A. (N. S.) 287. Each of these cases related to nuisances affecting public streets. Each of them was decided upon the ground that express or implied statutory authority was given for the maintenance of the action. In the former case it was held that, through the combined action of the highway law (Consol. Laws, c. 25) and the village law (Consol. Laws, c. 64), express authority was given to maintain an action in the name of the town to restrain encroachments upon the highway, creating obstructions thereto which amounted to a public nuisance. After referring to the express provisions of these statutes, the court also said that:

"As a municipal corporation possesses, beyond the powers specifically conferred upon it, such as are necessarily incidental, or which are essential, to the object of its existence, it may have the implied right to resort to a court of equity to protect the public and general rights, when menaced by an act which amounts to a public nuisance."

In the Eckerson Case the court, overruling a demurrer to the complaint in an action to restrain defendant from removing the lateral support to a village street, referred to the Village of Oxford Case, and said:

"Upon its authority, as in reason, we must hold that a municipal corporation may resort to a court of equity for the preservation of its streets and highways, and for the protection of the rights of the public therein, when their permanency and the public use thereof are menaced."

But the language used in those cases must have reference to the nature of the property which it was sought to protect. "Highways and streets, where there is no special restriction when acquired, are for the public use and not alone for the people of the town or municipality in which they are located. The use is none the less for the general public because they are situated within such municipality, and because the Legislature may have given the supervision and control of them to the local authorities." The town acts as a trustee for the public in reference to its rights in such streets. Inhabitants of Charlotte v. Pembroke Iron Works, supra.

In Township of Merritt v. Harp, supra, the court held that a township has such an interest in its highways that it may maintain a bill to restrain the unlawful flooding of the same. But that decision rested not only upon the relation above referred to in the nature of a trust relation for the benefit of the public, but upon the further ground that, as townships had been made responsible in certain cases for injuries arising from defective bridges and ways, they had an interest in the maintenance of such highways to protect themselves from such liability.

If the right of a municipal corporation to interfere to protect the private property of its citizens is to be based upon responsibility for permitting private rights therein to be invaded, it would be establishing a very dangerous precedent; for, if the right to maintain the action was put upon that ground, every municipal corporation would be liable to an action for damages at the suit of any citizen whose person or property was injured by the existence of a public nuisance within the corporate limits which it failed to enjoin. This precise question does not seem to have been before presented in this state; but upon reason and the best authorities in other states we are of the opinion that, in the absence of express statutory authority, a municipal corporation cannot maintain an action in equity to enjoin a public nuisance of this character which does not specially affect corporate property, or property in connection with which it occupies some relation of trust or responsibility, even though the private property of a considerable number of its citizens may be affected thereby.

The judgment appealed from must be reversed, and a new trial granted; costs to abide the event. All concur, except HIRSCHBERG, P. J., who dissents.