[No. 18605.  Department Two.  October 24, 1924.]

OWEN P. DILATUSH, *Appellant,* v. N. A. ROBERTS *et al.,*
*Respondents.*[1]

GAME (1) — PROTECTION — STATUTES — FORFEITURE AND CON-
FISCATION OF PROPERTY — CONSTITUTIONAL LAW — DUE PROCESS. The
game code, Rem. Comp. Stat., §§ 5894-5992, providing that unlaw-
ful appliances may be seized and destroyed without warrant or pro-
cess, is not invalid as depriving the owner of the property with-
out opportunity to be heard, since the courts are open to an action
for the recovery of the property.

SAME. Such act prohibiting the use of pivot, swivel and set
guns and appliances for deceiving and ensnaring game, and author-
izing their destruction without process, is not violative of the funda-
mental law, in view of the fact the same may be treated as a public
nuisance.

APPEAL (33) — DECISIONS REVIEWABLE — AMOUNT IN CONTRO-
VERSY. An action of replevin for a shot gun, forfeited by county
wardens, under Rem. Comp. Stat., § 5894, authorizing the seizure
and destruction of set, pivot and swivel guns, and appliances for
deceiving and ensnaring game, involves a construction of the statute
within the exclusive jurisdiction of the superior court, where the
value of the gun was less than $200, in view of Const., Art. 4, § 4,
restricting the jurisdiction of the supreme court in actions at law
for the recovery of .............. property, where the value of the
property does not exceed $200, unless the action involves ..........
....the validity of a statute.

Appeal from a judgment of the superior court for
Spokane county, Lindsley, J., entered March 8, 1924,
upon sustaining a demurrer to the complaint, dismiss-
ing an action in replevin.  Affirmed.

*Jno. L. Dirks,* for appellant.

*Chas. H. Leavy* and *Edward M. Connelly,* for re-
spondents.

FULLERTON, J.—This is an action in replevin,
brought by the appellant against the respondents to

[1]Reported in 229 Pac. 741.

recover a gun and gun case, alleged to be of the value of $125.

The record discloses that the appellant, being the owner of the gun and case in question, loaned the same to one Taylor to be used by Taylor in hunting game birds in Spokane county. Taylor, while using the gun in the pursuit of game birds, was arrested by a game warden for hunting without having the hunting license required by statute. At the time of the arrest of Taylor, the deputy seized the gun and case and afterwards turned them over to the respondents, who constitute the county game commission of the county of Spokane. The respondents refused to surrender the gun and case on demand, claiming that they are subject to forfeiture and confiscation under the game laws of the state, which prescribe the penalty of forfeiture of certain contrivances used in the unlawful killing of game birds. A demurrer was interposed to the appellant's complaint, which the trial court sustained. The appeal is from the judgment of the court dismissing the action after the appellant had elected to stand on the complaint.

In this court the appellant makes two principal contentions: first, that the provision of the statute on which the respondents rely in justification of their acts is invalid, because in contravention of the fundamental law; and, second, that the gun and case are not among the proscribed contrivances for killing and destroying game, which the statute makes subject to forfeiture and confiscation.

The statutes enacted for the protection of game animals and game birds, in so far as they are applicable here, are found in Rem. Comp. Stat. §§ 5894 to 5992, inclusive [P. C. § 2641-26]. It is unnecessary to set them forth at length. Generally, the statute defines

the terms "game animals" and "game birds," and prescribes the time when and the manner in which it shall be lawful to hunt, pursue, and kill the animals and birds defined. It makes it unlawful to use certain appliances in killing game, such as pivot, swivel and set guns, and makes it unlawful to use certain contrivances for attracting, deceiving and ensnaring game, such as flashlights, lanterns, blinds, nets and like devices; and makes it the duty of all officers empowered to enforce the game laws "to take, seize, abate and destroy all such devices, without warrant or process."

The objection the appellant makes to the statutes is that it authorizes the seizure and destruction of property without notice to the owner, and without giving him an opportunity to contest in a judicial proceeding the fact whether the property was being used in violation of the statute. Since, however, the statute does not make the judgment of the officers conclusive of the question, but leaves the doors of the courts open to an action against the officers, or, as in the present instance, open to an action to recover the property, it can hardly be said that the owner of the property is without judicial remedy for any wrongful exercise of the power. But if we are to meet the appellant on his chosen ground, we cannot concede that the statutes are violative of the fundamental law. While there are cases to the contrary, we think the weight of authority and the better reason supports such statutes. The question was carefully considered by the supreme court of the United States in *Lawton v. Steele,* 152 U. S. 133, wherein this language was used:

"The main, and only real difficulty connected with the act in question is in its declaration that any net, etc., maintained in violation of any law for the protection of fisheries, is to be treated as a public nuisance, 'and may be abated and summarily destroyed by any

person, and it shall be the duty of each and every
protector aforesaid and every game constable to seize,
remove, and forthwith destroy the same.' The legis-
lature, however, undoubtedly possessed the power not
only to prohibit fishing by nets in these waters, but to
make it a criminal offense, and to take such measures
as were reasonable and necessary to prevent such of-
fences in the future. It certainly could not do this
more effectually than by destroying the means of the
offence. If the nets were being used in a manner detri-
mental to the interests of the public, we think it was
within the power of the legislature to declare them
to be nuisances, and to authorize the officers of the
State to abate them. *Hart v. Albany,* 9 Wend. 571;
*Meeker v. Van Renssalaer,* 15 Wend. 397. An act of
the legislature which has for its object the preserva-
tion of the public interests against the illegal depreda-
tions of private individuals ought to be sustained,
unless it is plainly violative of the Constitution, or
subversive of private rights. In this case there can
be no doubt of the right of the legislature to authorize
judicial proceedings to be taken for the condemnation
of the nets in question, and their sale or destruction by
process of law. Congress has assumed this power in
a large number of cases, by authorizing the condem-
nation of property which has been made use of for the
purpose of defrauding the revenue. Examples of this
are vessels illegally registered or owned, or employed
in smuggling or other illegal traffic; distilleries or
breweries illegally carried on or operated, and build-
ings standing upon or near the boundary line between
the United States and another country, and used as
depots for smuggling goods. In all these cases, how-
ever, the forfeiture was decreed by judicial proceed-
ing. But where the property is of little value, and its
use for the illegal purpose is clear, the legislature may
declare it to be a nuisance, and subject to summary
abatement. Instances of this are the power to kill
diseased cattle; to pull down houses in the path of
conflagrations; the destruction of decayed fruit or fish
or unwholesome meats, or infected clothing, obscene
books or pictures, or instruments which can only be

used for illegal purposes. While the legislature has no right arbitrarily to declare that to be a nuisance which is clearly not so, a good deal must be left to its discretion in that regard, and if the object to be accomplished is conducive to the public interests, it may exercise a large liberty of choice in the means employed. *Newark Railway v. Hunt,* 50 N. J. Law, 308; *Blasier v. Miller,* 10 Hun 435; Mouse's Case, 12 Rep. 63; *Stone v. New York,* 25 Wend. 157, 173; *Am. Print Works v. Lawrence,* 21 N. J. Law, 248; 23 N. J. Law, 590.

"It is not easy to draw the line between cases where property illegally used may be destroyed summarily and where judicial proceedings are necessary for its condemnation. If the property were of great value, as, for instance, if it were a vessel employed for smuggling or other illegal purposes, it would be putting a dangerous power in the hands of a custom officer to permit him to sell or destroy it as a public nuisance, and the owner would have good reason to complain of such act, as depriving him of his property without due process of law. But where the property is of trifling value, and its destruction is necessary to effect the object of a certain statute, we think it is within the power of the legislature to order its summary abatement. For instance, if the legislature should prohibit the killing of fish by explosive shells, and should order the cartridges so used to be destroyed, it would seem like belittling the dignity of the judiciary to require such destruction to be preceded by a solemn condemnation in a court of justice. The same remark might be made of the cards, chips, and dice of a gambling room."

The cases approving the rules so announced will be found collected in 16 Rose's Notes on United States Reports (Rev. Ed.), p. 861.

The property authorized to be summarily abated by the statutes is not of such value as to cause it to fall within the exception to the rule noticed in the opin-

ion from which we quote, and we conclude that the act is not void because of the objection urged against it.

The second question is not before us for consideration. Whether the property here in question is subject to forfeiture and confiscation involves a construction of statute, a question over which the trial court has exclusive jurisdiction, since the property involved is not of sufficient value to invoke the jurisdiction of this court. State Constitution, art. 4, § 4; *Henry v. Thurston County,* 31 Wash. 638, 72 Pac. 488; *Gies v. Broad,* 41 Wash. 448, 83 Pac. 1025; *Hall v. Cowen,* 51 Wash. 295, 98 Pac. 670; *Malette v. Spokane,* 77 Wash. 205, 137 Pac. 496, Ann. Cas. 1915D 225, 51 L. R. A. (N. S.) 686.

The judgment is affirmed.

MAIN, C. J., MITCHELL, PEMBERTON, and PARKER, JJ., concur.