NEW YORK TRAP ROCK CORPORATION, Respondent, *v.* TOWN OF CLARKSTOWN et al., Appellants.

Submitted December 1, 1948; decided April 14, 1949.

*Lester D. Stickles* and *Edward G. Roepe* for appellants.
I. Defendants have the power to maintain an action to abate
or enjoin a public nuisance and therefore are empowered to
maintain this counterclaim. (*Village of Haverstraw* v. *Ecker-
son,* 192 N. Y. 54; *Village of Oxford* v. *Willoughby,* 181 N. Y.
155; *City of New York* v. *Knickerbocker Trust Co.,* 104 App.
Div. 223; *Pine City* v. *Munch,* 42 Minn. 342; *Board of Health
of City of Yonkers* v. *Copcutt,* 140 N. Y. 12; *Village of Carthage*
v. *Frederick,* 122 N. Y. 268; 3 McQuillin on Municipal Corpora-
tions [Rev. ed.], ch. 25, § 959; 2 Wood on Law of Nuisances
[3d ed.], ch. XXII, § 743.) II. To allege a cause of action for
nuisance it is only necessary to set forth that defendant is doing
some act which endangers the public health or safety and that
defendant is injured thereby. (*Melker* v. *City of New York,*
190 N. Y. 481; Penal Law, § 1530; *Sweet* v. *Campbell,* 282 N. Y.·
146; *Dixon* v. *New York Trap Rock Corp.,* 293 N. Y. 509; *Hay* v.
*Cohoes Co.,* 2 N. Y. 159; *Tremain* v. *Cohoes Co.,* 2 N. Y. 163.)

*Joseph Diehl Fackenthal* and *A. J. Bryant* for respondent.
I. Defendants have not capacity to sue. (*Village of Granville*
v. *Krause,* 131 Misc. 752; *City of Yonkers* v. *Federal Sugar*

*Refining Co.*, 136 App. Div. 701, 207 N. Y. 724; *Village of New Rochelle* v. *Lang,* 75 Hun 608; *Village of Hempstead* v. *Ball Elec. Light Co.*, 9 App. Div. 48.) II. The counterclaim does not state a cause of action. (*People* v. *Transit Development Co.*, 131 App. Div. 174; *People* v. *Borden's Condensed Milk Co.*, 165 App. Div. 711, 216 N. Y. 658; *Miller* v. *Twiname,* 129 App. Div. 623; *People* v. *Cooper,* 200 App. Div. 413; *McCarty* v. *Natural Carbonic Gas Co.*, 189 N. Y. 40; *Booth* v. *Rome, Watertown & Ogdensburg Term. R. R. Co.*, 140 N. Y. 267; *Newgold* v. *Childs Co.*, 148 App. Div. 153; *Haber* v. *Paramount Ice Corp.*, 239 App. Div. 324; *Barrett* v. *Federal Crushed Stone Corp.*, 147 Misc. 808, 245 App. Div. 800.)

CONWAY, J. This action was brought by the plaintiff corporation to secure an adjudication that a building zone ordinance of the Town of Clarkstown is void and of no effect as to certain of plaintiff's land in the Town and to enjoin the defendants from enforcing the ordinance as to such land. The defendants are the Town of Clarkstown (hereafter referred to as Town), the Town board as well as the individual members thereof, and the building inspector of the Town. We are not here concerned with the sufficiency of the facts alleged in the complaint to constitute a cause of action.

In their answer, the defendants set up a separate defense and a counterclaim. The defense appears in paragraphs 8 and 9 and reads as follows:

"8. For some time prior to April 4, 1939 and since that time, the plaintiff has operated in the Town of Clarkstown on the premises more particularly described in the complaint, a quarry wherein certain stone is processed into material for commercial use and in the quarrying of said stone and rock various charges of dynamite or other powerful substances are used in setting off numerous blasts causing concussions whereby the rock is loosened and thereby made available for plaintiff's use.

"9. The quarrying operations conducted by the plaintiff as aforesaid have caused other properties in the township to be damaged and depreciated in value and have injured the health of the citizens of the Township and have interfered with the reasonable, proper and orderly residential development in said Township."

The counterclaim reads as follows: " 10. Defendants repeat and reallege each and every allegation contained in Paragraphs 8 and 9 hereof as if the same were fully set forth herein."

With respect to the counterclaim, defendants demanded judgment " Perpetually enjoining the plaintiff, its officers, employees, agents and representatives from operating a quarry in the Town of Clarkstown in a manner which is detrimental and injurious to persons and property in such Township; * * *."

Plaintiff's motion to dismiss the counterclaim was made upon the grounds, among others, that the defendant Town did not " have capacity to maintain an action of the character set forth in said counter-claim " and that the defendants other than the Town " do not have and that none of said defendants has the capacity to maintain an action of the character set forth in said counter-claim ". Finally, plaintiff urged that the counterclaim did not state facts sufficient to constitute a cause of action. Special Term denied the motion but the Appellate Division was of the opinion that defendants had no capacity to sue in connection with the subject matter of the counterclaim as there was no statute giving them power so to do.

The counterclaim is in effect a separate and distinct action brought by defendants against plaintiff. The judgment of the Appellate Division dismissing it, impliedly severed it from the action, which still is pending undetermined, and to that extent is final.

Plaintiff's argument that the counterclaim fails to state a cause of action is without merit. On this appeal, we must accept as true the allegations therein that plaintiff's blasting and its quarrying operations have, in the words of paragraph 9 (1) " caused other properties in the township to be damaged and depreciated in value "; (2) " injured the health of the citizens of the Township ", and (3) " interfered with the reasonable, proper and orderly residential development in said Township." While these allegations are brief, they set forth the essential elements of an action for public nuisance. A public nuisance has been defined as an act or omission which obstructs or causes damage to the public in the exercise of rights common to all. (Prosser on Torts, p. 566; Salmond on Torts [9th ed.], p. 229; 21 Halsbury's Laws of England, pp. 508–510, 531.) The counterclaim sets forth conduct of plaintiff which, it is alleged,

has caused damage to the health and property of the citizens of the Town. Whether that conduct constitutes a public nuisance must be determined as a question of fact under all the circumstances. At the trial, defendants may attempt to prove that the method, frequency, location and general character of plaintiff's blasting have interfered with the rights of the general public in the vicinity to the quiet enjoyment of life and property. The pleaded allegations of the counterclaim admit of such proof (*People* v. *Borden's Condensed Milk Co.*, 165 App. Div. 711, affd. 216 N. Y. 658; cf. *Dixon* v. *New York Trap Rock Corp.*, 293 N. Y. 509, 513.)

Plaintiff also argues that the allegations of the counterclaim do not meet the requirements of section 1530 of the Penal Law, which, it argues is " declaratory of the common law " and " is the only definition of a public nuisance known to the law of this State either criminal or civil." Plaintiff quotes the following portion of that section:

" A ' public nuisance ' is a crime against the order and economy of the state, and consists in unlawfully doing an act, or omitting to perform a duty, which act or omission:

" 1. Annoys, injures or endangers the comfort, repose, health or safety of any considerable number of persons; or, * * *

" 4. In any way renders a considerable number of persons insecure in life, or the use of property."

Assuming that the elements set forth in that section are the necessary elements of an action to restrain a public nuisance, the counterclaim, though brief, alleges facts sufficient to constitute a cause of action. The plaintiffs are alleged to be performing acts which have injured the health of the citizens of the township. Such acts would be unlawful and a public nuisance.

The Appellate Division did not pass upon the sufficiency of the facts stated in the counterclaim, but instead predicated its decision upon the ground that defendants had no capacity to sue in connection with the subject matter of the counterclaim. That is the primary question in the case at this stage of the litigation. In dismissing the counterclaim, the Appellate Division cited and relied upon *City of Yonkers* v. *Federal Sugar Refining Co.* (136 App. Div. 701) which was affirmed on the opinion of BURR, J., below in 207 New York 724. That case, however, is not determinative of the question now before us.

There, the City of Yonkers sought to enjoin the maintenance of a public nuisance, which consisted in defendant's conduct in allowing " ' black smoke, soot, dust and cinders to escape from its smokestack and to pass over, upon and through the streets and public places of the said City of Yonkers, or upon the property and persons of the residents thereof. ' " (P. 702.) A judgment in the city's favor had been rendered upon a report of a referee. The Appellate Division held in an opinion, which this court adopted as its own, that there was *no evidence* that the streets of the city were made unsafe or insecure, or that the health of the public while using them was affected. There was, however, some evidence of injury to private property of the citizens of the city. The remainder of the opinion must be read in the light of that condition of the record.

Justice BURR stated the rule as follows (p. 704) : " A nuisance which is exclusively common or public cannot lawfully be abated at the suit in equity of any private individual or corporation. The remedy is by indictment or criminal prosecution or, under some circumstances, by an action in equity on behalf of the sovereign power, either through the Attorney-General or some other agent to whom the sovereign power has been delegated." The court concluded that no express statutory authority had been conferred upon the plaintiff to maintain the action, and that, in the absence of such authority, the municipal corporation could not maintain an action to enjoin a nuisance of that character. The court said (p. 710) : " * * * This precise question does not seem to have been before presented in this State, but upon reason and the best authorities in other States we are of the opinion that, in the absence of express statutory authority, a municipal corporation cannot maintain an action in equity to enjoin a public nuisance of this character which does not specially affect corporate property, or property in connection with which it occupies some relation of trust or responsibility, even though the private property of a considerable number of its citizens may be affected thereby." We left open the question whether such an action could be maintained by a municipal corporation where the public nuisance affected the health of its citizens. In addition to restricting the language throughout the opinion to nuisances affecting private property of citizens, it was specifically said (p. 703) :

" We do not now consider its power in reference to nuisances affecting the public health, since the nuisance complained of is not of such a character."

The *City of Yonkers* case (*supra*) is authority for the proposition that, under the common law and in the absence of statutory authorization, a municipal corporation, such as the defendant Town of Clarkstown in the instant case, may not bring an action to restrain a public nuisance which causes damage *to the private property of its citizens*. Defendants contend, however, that the cause of action set forth in the counterclaim may be maintained by the Town to the extent that it seeks to restrain a public nuisance which has injured the health of its citizens. On that question, the *City of Yonkers* case, by express limitation, is not decisive and the question is an open one.

We think that a municipal corporation such as the defendant Town in the instant case has the capacity and is a proper party to bring an action to restrain a public nuisance which allegedly has injured the health of its citizens. That conclusion is dictated by policy and principle and finds warrant in both the common law and statutes of this State.

In the instant case, the defendant Town was created by and exists as a civil subdivision of the State. It carries on the business of government on a local plane. It is empowered to act to promote the health, safety and general welfare of the community. (Town Law, § 130, subd. 15.) The representatives of the citizens of the Town on the Town board are familiar with local problems and are in a peculiarly advantageous position to observe the need for, and to take, effective and immediate action through the Town when necessary to safeguard the health of the citizens of the Town. Furthermore, the Town board is given *general* power to authorize the institution of any action in the name of the Town. See subdivision 1 of section 65 of the Town Law, which provides in part as follows: " * * * The town board of any town may authorize and direct any town officer or officers to institute, defend or appear, in any action or legal proceeding, in the name of the town, as in its judgment may be necessary, for the benefit or protection of the town, in any of its rights or property. * * * "

No sound reason is advanced why the Town cannot maintain an action to restrain a public nuisance affecting the *health* of

its citizens and there is no case in this State which has denied such power to a municipal corporation such as the Town, in cases involving the public health. One of the basic reasons for the origin of the rule generally limiting the bringing of actions to restrain public nuisances to the Attorney-General was the danger of multiplicity of suits. That danger is obviously eliminated when the action to restrain a town nuisance is brought by the town which has general power to sue, and not by a private individual. The other consideration which led to the establishment of the general rule was largely theoretical and conceptual, i.e., that the offense, being one common to the public, should be enjoined at the suit of the sovereign's law officer. There may be practical basis for such reasoning when the public nuisance affects only the private property of the citizens of a municipality. However, where the public health is involved, the right of the town to bring such an action to restrain a public nuisance may be tantamount to its right of survival. In permitting the creation of such local subdivisions, the Legislature obviously conferred upon them the right to protect their own existence, and it is clear that a public nuisance which injures the health of the citizens of a municipality imperils the very existence of that municipality as a governmental unit. The right to exist necessarily implies the right to take such steps as are essential to protect existence. Pomeroy in his work on Equity Jurisprudence (Vol. 4, 5th ed., § 1349) recognizes that, while the Attorney-General is the proper one to bring such actions in England, the power may be exercised more generally by other representatives of the people in this country. He says: " A court of equity has jurisdiction to restrain existing or threatened public nuisances by injunction, at the suit of the attorney-general in England, and at the suit of the state, or the people, *or municipality,* or some proper officer representing the commonwealth, in this country." (Emphasis supplied.)

The Legislature has enacted extensive laws relating to nuisances affecting the public health. These laws evidence an intention on the part of the Legislature to place the subject of public nuisances affecting public health primarily under the supervision of local boards or departments of health. (See Public Health Law, art. 3; Second Class Cities Law, § 152;

and see statutes collected under McKinney's Unconsol. Laws, tit. 18, ch. 1, especially, § 6709.)

In a town such as the defendant Town of Clarkstown the Town board constitutes the local board of health and has all the powers and duties of such board. (Public Health Law, § 20, subd. 1; Town Law, § 60, subd. 2.) Such local boards of health are given the power to make orders and regulations for the suppression of nuisances. (Public Health Law, § 21.) The board of health may prescribe and impose penalties for violation of or failure to comply with its orders or regulations, and may sue for such penalties in the name and for the benefit of the town. In addition, the local board of health is specifically empowered to "maintain actions in any court of competent jurisdiction to restrain by injunction such violations, or otherwise to enforce such orders and regulations." (Public Health Law, § 21, subd. 3.) Under section 26 of the Public Health Law, the board of health is charged with the duty of examining into all complaints made by any inhabitant concerning nuisances or causes of danger or injury to life and health within the municipality. After inspection and examination of the alleged nuisance, the board must furnish the owners, agents or occupants of the premises with a written statement of the results and conclusions of such examination. The section then commands that "Every such local board shall order the suppression and removal of all nuisances and conditions detrimental to life and health found to exist within the municipality." Under section 31 of the Public Health Law, if the owner or occupant of the premises fails to comply with such order or regulation for the suppression and removal of such nuisance, the local board "may enter upon the premises to which such order or regulation relates, and suppress or remove such nuisance". Finally, section 135 of the Town Law expressly provides that " * * * The town board may also maintain an action or proceeding in the name of the town in a court of competent jurisdiction to compel compliance with or to restrain by injunction the violation of any such ordinance, rule or regulation, notwithstanding that the ordinance, rule or regulation may provide a penalty or other punishment for such violation." While there is no section specifically authorizing the Town board to sue in equity in the

name of the Town to restrain a public nuisance without prior action on the matter by order or regulation, the power so to do is to be implied from the express powers granted. The Legislature has clearly contemplated the broad use of the injunction by towns in the performance of their statutorily delegated functions, and has impliedly delegated to towns the power to bring an action to restrain a common-law public nuisance — if, as indicated above, the town does not possess that power already to preserve its existence. It is well settled that a village or town is not restricted to the exercise of its specifically granted powers but possesses also such powers " as are necessarily incident to, or may fairly be implied from, those powers, including all that are essential to the declared object of its existence." (*Village of Carthage* v. *Frederick,* 122 N. Y. 268, 271; *Village of Haverstraw* v. *Eckerson,* 192 N. Y. 54; *Village of Oxford* v. *Willoughby,* 181 N. Y. 155; see Town Law, § 64, subd. 23.) Here, by the provisions of the Public Health Law, the defendant Town, through its board of health, is given broad and drastic powers relating to the suppression and removal of nuisances affecting the public health and it is granted the power to act generally in " promoting the health, safety, morals or general welfare of the community ". (Town Law, § 130, subd. 15.) These powers fairly imply the existence of the further power to bring an action to restrain a nuisance affecting the public health, when in the judgment of the representatives of the town, such action is vitally necessary for the protection of the health of its inhabitants. As stated in *Board of Health of City of Yonkers* v. *Copcutt* (140 N. Y. 12, 21) " Certainly in a matter so serious as that of the public health they [local boards of health] ought not to wait until some citizen is sick or dead before they prevent or abate the nuisance tending to the injurious result." An action by the town for an injunction in such a case may be necessary for its own protection and survival, and may be necessary to justify one of the declared objects of its existence. The power of actual physical abatement of the nuisance granted to the town by subdivision 1 of section 20 and section 31 of the Public Health Law is certainly more drastic than the power here sought to be exercised. (See *People ex rel. Copcutt* v. *Board of Health of City of Yonkers,* 140 N. Y. 1, 8, 10.) Thus at page 8 it was said

(Earl, J.) : " It may be said that if the determination of a board of health as to a nuisance be not final and conclusive, then the members of the board, and all persons acting under their authority in abating the alleged nuisance, act at their peril; and so they do, and no other view of the law would give adequate protection to private rights. They should not destroy property as a nuisance unless they know it to be such, *and if there be doubt whether it be a nuisance or not the board should proceed by action to restrain or abate the nuisance, and thus have the protection of a judgment for what it may do.*" (Emphasis supplied.) Moreover, the exercise of the conceded power to bring an action to restrain violations of orders or regulations on matters concerning the public health would present to the court only the same question here sought to be raised, i.e., whether or not the conduct of the plaintiff as set out in the counterclaim in fact constitutes a public nuisance.

With all this in mind, the general provision of subdivision 1 of section 65 of the Town Law quoted above, authorizing the Town to institute any action or legal proceeding, in the name of the Town, as in the judgment of the Town board may be necessary for the benefit or protection of the Town, in any of its rights or property, clearly encompasses an action such as is here involved.

The judgment of the Appellate Division should be modified by striking therefrom so much thereof as dismissed the counterclaim contained in the defendants' amended answer, and the order of Special Term affirmed insofar as it denies the motion to dismiss said counterclaim, with one bill of costs in this court and in the Appellate Division.

Loughran, Ch. J., Lewis, Desmond, Dye and Fuld, JJ., concur.

Judgment accordingly.