■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. HST METH, INC., et al., Appellants.— Order and judgment (one paper), Supreme Court, New York County, entered on August 8, 1973, after trial, permanently enjoining defendants from operating a methadone maintenance program, at a certain location, in such a manner as to constitute a public nuisance, affirmed, without costs and without disbursements. The totality of the evidence adduced at the hearing below presented a fair question of fact as to whether the appellants were conducting the methadone clinic in a lawful and proper manner, or whether they were so lax, negligent and inattentive as to allow the clinic to deteriorate into a public nuisance. Under all the circumstances disclosed, it seems clear that a question of fact is presented as to whether these defendants were actually guilty of maintaining a public nuisance. The insistence of the

appellant that, since the clinic was being operated pursuant to legislative authority and was certified by Federal, State and local administrative agencies, it could not, under the law, be deemed a public nuisance, is unsound and contrary to established law. As is conceded by our dissenting colleague, the authority of the Attorney-General to move to abate a public nuisance is well established, despite the fact that the activities constituting same are being conducted in duly licensed premises. (*New York Trap Rock Corp.* v. *Town of Clarkstown*, 299 N. Y. 77.) An examination of the record discloses that there is ample evidence, if believed, to support the judgment below. And it must have been believed by the Trial Judge, in view of his determination. That being so, we have no right to interfere with that determination. Even conceding that some of the evidence might be open to question as to its admissibility, the fact is that there is overwhelming legal evidence in the case which justifies the conclusion reached. The Police Department conducted an investigation of the goings-on in the premises of the clinic, as actually observed by undercover police officers. The details of that report were presented to the court below and marked plaintiff's Exhibit No. 2. The investigation, amongst other things, uncovered illegal drug traffic on the premises, in some instances involving employees of the clinic, as the result of which a police raid was conducted and a number of arrests made. The evidence also discloses that, during the period of August, 1972 through February, 1973, the Lenox Hill Hospital ambulances made 46 calls at the clinic, at least 19 of which were due to overdoses of drugs. In contrast to the manner in which defendants conducted their clinic, a number of other clinics in the general neighborhood were operating without major difficulties or complaints of any consequence. In fact, one of them was located on Park Avenue near East 88th Street, not far from defendants' clinic and it earned the approbation of some of the very witnesses who testified against the defendants in the case at bar. Concur —Kupferman, J. P., Capozzoli and Lane, JJ.; Murphy, J., dissents in the following memorandum: The instant action presents another illustration of the increasing number of conflicts between community residents and public officials over the placement and operation of treatment centers for the afflicted in stable residential areas. While it cannot be gainsaid that the proliferation of these institutions causes local problems and that greater concern for the rights and needs of local area residents must be shown, I find no sufficient basis, in fact or in law, for the limited injunctive relief granted below. Nor, in my opinion, can the order and judgment granted be effectively implemented or enforced. The prohibition against treatment by the defendants of any patient who is "drunk, loud, boisterous or disorderly; who accosts, harasses, insults, abuses, threatens, or annoys any person or who commits any illegal act, or who disobeys the proper orders of any peace officer or their security guards, in or about their premises and the surrounding [defined] neighborhood" and the provisions enjoining defendants "from operating their methadone maintenance treatment program unless they employ additional and sufficient uniformed security guards * * * who shall be under instructions to disperse groups of more than two patients loitering on East 84th Street between Third and Lexington Avenues" are so vague as to be unenforceable. Since the court below retained jurisdiction of the action for all purposes, it will undoubtedly now be required to conduct a multiplicity of trials, on contempt applications, to determine if any patient given treatment was "loud" or "annoys any person", or disobeyed a "proper order" of a security guard, or if the facility, on any given occasion, employed "sufficient" uniformed guards. Of greater concern, however, is whether any judicial relief

934

is warranted under the circumstances disclosed. Appellants operate a methadone maintenance facility pursuant to article 33 of the Public Health Law. Their program has been licensed, certified or inspected by the Federal Drug Administration, Bureau of Narcotics and Dangerous Drugs (United States Department of Agriculture), Bureau of Narcotics Control (New York State Health Department) and the New York City Health Services Administration. Despite the legislative authorization of such facility, the Attorney-General has attempted to label it a public nuisance and has succeeded in severely curtailing its operations. In addition to restricting the types of persons who may be serviced, the trial court arbitrarily reduced the caseload to 300 patients. The sole justification for said reduction was an oblique reference to such figure as a suggested guideline by the Health and Hospitals Planning Council during the cross-examination of the Assistant Commissioner of the New York City Health Services Administration, who also serves as the Director of the city-operated maintenance treatment programs. While the witness opined that a 300-patient caseload was a " reasonable figure ", he admitted that the city's own clinics serviced a greater number. No such limitation appears to have been imposed by any law or supervising agency. The predicate for the trial court's decision to grant limited injunctive relief was protracted testimony, much of it rank hearsay, to the effect that the facility has had an adverse effect on the neighborhood. Those availing themselves of the methadone program were claimed to be boisterous, insulting and vulgar. Local residents, including children, were allegedly terrorized and have become fearful. In the language of the Trial Justice, the street had become " a veritable market place for narcotics ". A police department investigation disclosed evidence of drug sales being made within and without the center. This, of course, is a basis of criminal prosecutions and may also be considered as to whether or not the license to operate the facility should be revoked, but that is not this proceeding. While the authority of the Attorney-General to abate a public nuisance is well established (*Cranford* v. *Tyrrell*, 128 N. Y. 341; *New York Trap Rock Corp.* v. *Town of Clarkstown,* 299 N. Y. 77), such authority is not unlimited. Where, as here, the State has sanctioned the operation of a facility in the public interest, with official agencies charged with supervising its operation, the performance by such facility of its necessary and incidental functions cannot be deemed a public nuisance absent a clear showing that it is being improperly, negligently or unlawfully operated. (*People* v. *Brooklyn and Queens Tr. Corp.,* 283 N. Y. 484; *People* v. *Accurate Brass Co.,* 271 App. Div. 1031; *Congregation Emunath Israel* v. *New York City Off-Track Betting Corp.,* 69 Misc 2d 781; see, also, Prosser, Law of Torts [4th ed.], p. 606; 58 Am. Jur. 2d, Nuisances, § 229; Ann. 21 ALR 3d 1058.) Even if we disregard the hearsay nature of much of the testimony adduced, it appears from the record that the thrust of the testimony related to the activities of the center's patients in and around the center and the fears and anxieties of the community's residents. The remedy for any such misconduct or apprehension is greater police presence in the area. And if the real grievance be the existence, size or location of the facility, the remedy lies with the legislature or the licensing agencies, not the courts. The problem inherent in the operations of methadone maintenance facilities are readily foreseeable so that reasonable planning and licensing should reflect not only adequate structures and medical care, but also locations which can best absorb the facility with minimal disruption to existing neighborhoods. The order and judgment (one paper) appealed from should be reversed and the complaint dismissed. [74 Misc 2d 920.]